UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JOHN NAVELSKI, et al.,

    Plaintiffs,

v.                                Case No. 3:14cv445/MCR/CJK

INTERNATIONAL PAPER COMPANY,

    Defendant.
_____/

# ORDER

Defendant has filed a Motion for Reconsideration, ECF No. 97, asking the Court to reconsider its March 25, 2017 Order granting in part and denying in part Plaintiffs' Motion for Class Certification, ECF No. 93.[1] While the Court is not persuaded that it should reconsider its decision to certify a liability-only class in this case, the Court finds it appropriate to clarify certain aspects of the Order.

Reconsideration of a non-final order "is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Wendy's Int'l, Inc. v. Nu-Cape Const., Inc.*, 169 F.R.D. 680, 685 (M.D. Fla. 1996). There are three major grounds that justify reconsideration: (1) an intervening change in the controlling law; (2) the discovery of new evidence that

---

[1] The Court finds Defendant's motion suitable for determination without oral argument. *See* N.D. Fla. Loc. R. 7.1(K).

was not available when the original motion was decided; or (3) the need to correct clear error or prevent manifest injustice. *See Fla. College of Osteopathic Medicine, Inc. v. Dean Witter Reynolds, Inc.*, 12 F. Supp. 2d 1306, 1308 (M.D. Fla. 1998); *see also Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007). A motion for reconsideration may not be used to relitigate old issues, "to raise new arguments which should have been raised in previous briefing, or to vent dissatisfaction with the [c]ourt's reasoning." *Local Access, LLC v. Peerless Network, Inc.*, --- F. Supp. 3d ---, 2016 WL 6984522, at *2 (M.D. Fla. Nov. 29, 2016); *see also Arthur*, 500 F.3d at 1343; *Gonzalez v. Secretary or Dep't of Corrections*, 366 F.3d 1253, 1292 (11th Cir. 2004). The moving party "must demonstrate why the court should reconsider its prior decision and set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Instituto de Prevision Militar v. Lehman Bros., Inc.*, 485 F. Supp. 2d 1340, 1343 (S.D. Fla. 2007).

     Defendant asserts that the Court's decision to certify a liability-only class in this case "raises legal and practical difficulties that were not at issue, and therefore not addressed by [Defendant], in the class certification briefing." ECF No. 98 at 5. Before delving into the merits of Defendant's objections, the Court first observes that bifurcation of liability and damages was a very real and foreseeable possibility from the early stages of this litigation. As part of the parties' Joint Rule 26(f) Report dated October 31, 2014, Plaintiffs proposed a bifurcated discovery and trial schedule

in which liability would be adjudicated first, on a classwide basis, followed by separate trials with respect to individual losses if Plaintiffs were successful in proving Defendant's liability. *See* ECF No. 20 at 3-6. When Plaintiffs moved for class certification, they again proposed a bifurcated trial plan and expressly identified liability as a common issue requiring classwide adjudication before individualized damages questions could be considered. *See* ECF No. 62 at 26-28, 29-31. Plaintiffs have never wavered in their pursuit of a classwide liability determination. The fact that Defendant elected not to fully address this potential outcome in its opposition brief or at the class certification hearing, perhaps assuming that Plaintiffs' expert on classwide liability would be excluded, does not entitle Defendant to raise new arguments that could have been raised at the time of the class certification decision. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 957 (11th Cir. 2009) (stating that a litigant cannot use a motion for reconsideration to raise "new arguments that were previously available, but not pressed"); *see also Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 614 (C.D. Cal. 2013) (stating that "a party's dissatisfaction with counsel's strategic decisions after an adverse result on a motion is not a proper ground for granting a motion for reconsideration"). As discussed below, each of Defendant's current arguments against the certification of a liability-only class either could have been presented earlier or is insufficient to

establish that the Court's decision on class certification was clearly erroneous or manifestly unjust.

Defendant argues that the class certification decision should be reconsidered because the Court erred in failing to take a position on the relative merits of the parties' conflicting expert testimony on causation. This argument is flawed because it misapprehends the extent to which the Court may evaluate the merits of Plaintiffs' claims in deciding whether the requirements for class certification have been met. While a district court's class certification analysis "may entail some overlap with the merits of the plaintiff[s'] underlying claim, Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, -- U.S. --, 133 S. Ct. 1184, 1194-95 (2013) (citations omitted). Rather, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.*, *quoted in Brown v. Electrolux Home Products, Inc.*, 817 F.3d 1225, 1234 (11th Cir. 2016); *see also Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1187 (11th Cir. 2003) ("Although the trial court should not determine the merits of the plaintiffs' claim at the class certification stage, the trial court can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied."). In this case, neither the substantive merits of Plaintiffs' claims nor the conflicting

expert conclusions about whether the Dam failure caused the subject flooding are material to the question of whether the Rule 23 prerequisite of predominance is satisfied.

The predominance inquiry tests whether a proposed class is "sufficiently cohesive to warrant adjudication by representation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 376 (2011). This requires courts to give "careful scrutiny to the relation between common and individual questions in a case." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016). An individual question is one in which "members of a proposed class will need to present evidence that varies from member to member," while a common question "is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Id*. Thus, in this case, the dispositive question for Rule 23 purposes is whether causation is an issue that is susceptible to generalized, classwide proof. *See id*.; *see also Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1260-61 (11th Cir. 2003) ("[P]redominance is met when there exists generalized evidence which proves or disproves an element on a simultaneous, classwide basis."). Importantly, on this question, the parties' experts do not conflict.

Both Plaintiffs' expert, Dr. Mark Ross, and Defendant's expert, Dr. Frank Lan, relied on complex hydrologic and hydraulic modeling programs to analyze the question of whether the failure of the Kingsfield Road Dam caused the flooding in

Plaintiffs' homes, and both of them ultimately provided causation opinions with classwide application. *See* ECF Nos. 87-12 at 34, 87-13 at 9-1. According to Dr. Ross's models, *all* of the flooding experienced by individual homes in the subject neighborhoods, with the exception of five houses, was caused by the failure of the Kingsfield Road Dam.[2] On the other hand, according to Dr. Lan's models, the Dam failure had only a "negligible" impact on flooding in the subject neighborhoods. *See* ECF No. 87, Exh. M at 9-1.[3] In other words, Dr. Lan's models indicate that essentially *none* of the flooding Plaintiffs' allegedly experienced was caused by the failure of the Kingsfield Road Dam. Notably, neither expert described any individualized, plaintiff-specific evidence that was necessary to his analysis or conclusion on classwide causation. Moreover, Dr. Lan testified that both he and Dr. Ross used widely accepted, highly sophisticated methodologies that were appropriate for resolving the causation question presented here—that is, whether the Dam failure actually caused the subject flooding. *See* ECF No. 102 at 135-36, 150, 165. Thus, the parties' respective experts each proved or disproved causation on a classwide basis through common evidence, in essence, agreeing on the only issue

---

[2] In their Complaint, Plaintiffs allege that the failure of the Kingsfield Road Dam "caused and/or contributed to" the flooding in their neighborhoods. *See* ECF No. 1-1. The current record evidence does not support that allegation in its entirety. As discussed in the body of this Order, Plaintiffs' expert concluded that *all* of the flooding in the subject neighborhoods was caused by the Dam failure.

[3] International Paper Dam on Elevenmile Creek, Hydrologic and Hydraulic Analysis Report by Yongqiang (Frank) Lan, Ph.D., P.E.

material to the Rule 23 predominance inquiry: that causation is susceptible to generalized, classwide proof. *See Allapattah*, 333 F.3d at 1260-61. The conflict between the experts' conclusions in this case relates exclusively to the merits of Plaintiffs' claims, not to whether common questions predominate. Therefore, the Court need not and may not resolve the dispute in order to certify a class with respect to causation. *See Blades v. Monsanto Co.*, 400 F.3d 562, 567 (8th Cir. 2005) (holding that at the class certification stage, factual disputes "may be resolved only insofar as resolution is necessary to determine the nature of the evidence that would be sufficient, if the plaintiff's general allegations were true, to make out a prima facie case for the class"). On this record, the Court's inquiry was "properly limited to whether, if [Plaintiffs'] basic allegations were true, common evidence could suffice . . . to show classwide [causation]." *See Blades*, 400 F.3d at 575.

The Court's decision on this matter is in complete accord with *Sher v. Raytheon Co.*, 419 F. App'x 887 (11th Cir. 2011), a case heavily relied on by Defendant in support of its argument that the Court was required to resolve the dispute between the experts' conclusions on whether the Dam failure caused the flooding in order to certify a class in this case. In *Sher*, the Eleventh Circuit ruled that a district court erred by failing to resolve a dispute between the parties' experts on a factual issue that was critical to determining whether the plaintiffs' diminution in value damages claims could be resolved on a classwide basis—more specifically,

the plaintiffs' expert stated that damages could be proved on a classwide basis using multiple regression modeling, whereas the defendant's expert opined that the properties in the proposed class area could not be evaluated together and that only individual appraisals could measure whether and to what extent a given property was impacted by the environmental contamination alleged in the case. *Id*. Because the experts disagreed about facts that were material to the question of whether the Rule 23 prerequisite of predominance was met, the Eleventh Circuit held that the district court could not determine whether class certification was appropriate without first "declar[ing] a proverbial, yet tentative winner" between the experts. *Id*. at 891. In contrast, the dispute between the experts in this case is on the merits alone.

The Court emphasizes that its decision to certify a liability-only class is a direct function of the record as it currently stands. Again, and contrary to Defendant's assertion during the class certification hearing, the evidence before the Court does present an "all or nothing" proposition on the issue of causation. *See* ECF No. 103 at 46. As explained, based on the testimony of the parties' respective experts, the failure of the Kingsfield Road Dam either caused *all* of the flooding or *none* of it. That is the current state of the evidence and, both from a scientific perspective and for class certification purposes, there is no middle ground.[4] It may

---

[4] It is true that a jury "may believe or disbelieve any witness, in whole or in part." Eleventh Circuit Pattern Jury Instructions (Civil Cases), Basic Instructions 3.4. However, there must be an evidentiary basis for every verdict and the plaintiff must provide it. *See Blount Bros. Corp. v.*

be, as Defendant argues, that the liability jury finds Dr. Ross's frictional value was too low. In that scenario, Dr. Ross's expert opinion will have been refuted because it is predicated on the complex interplay between the frictional value and the myriad other variables that were combined in his hydrologic and hydraulic modeling programs to simulate the impact of the subject storm on the Elevenmile Creek watershed. The jury cannot simply supply its own, higher frictional value. It also may be that the evidence at trial demonstrates that some or all of the homes in the subject neighborhoods flooded during past storm events, which might tend to support a conclusion that those same homes would have flooded again during the 100-year storm event in this case, whether or not the Kingsfield Road Dam failed. Again, that conclusion would refute Dr. Ross's expert opinion, as he maintains that *all of the flooding* is attributable to the failure of the Dam. At any rate, that certain homes have a history of flooding is not established by the evidence presented to the Court to this point. Indeed, at the class certification hearing, only one homeowner testified that his property had flooded once before in 1998. *See* ECF No. 101 at 147. Neither side followed up on that testimony and, without any other evidence of

---

*Reliance Ins. Co.*, 370 F.2d 733, 739 (5th Cir. 1967) ("[I]f there is not evidentiary basis for the jury's verdict, then the verdict cannot be permitted to stand.") (The Eleventh Circuit, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981). Thus, in this case, the jury may not reject the scientific evidence in favor of its own intuitions about rainstorms and flood patterns. The current evidentiary record limits the causation determination to two possible conclusions—either the Dam failure caused *all* of the flooding or *none* of it.

historic flooding to individual homes in the subject neighborhoods, this testimony alone is insufficient to defeat predominance, particularly in light of the all or nothing expert opinions. With predominance having been established, the Court properly found that certification of a liability-only class was appropriate.

The Seventh Amendment does not compel a contrary result. The Seventh Amendment provides, in relevant part, that "no fact tried by a jury, shall be otherwise reexamined in any Court of the United States." U.S. Const. amend. VII.[5] To avoid conflict with this constitutional provision, issues in a single suit may only be tried by different juries if they are "so distinct and separable . . . that a trial of [each] alone may be had without injustice." *Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 494, 499 (1931). In the bifurcation context, this means that a court "must not divide issues between separate trials in such a way that the same issue is reexamined by separate juries." *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1303 (7th Cir. 1995), *cert. denied*, 516 U.S. 867 (1995); *see also Blyden v. Mancusi*, 186 F.3d 252, 268 (2d Cir. 1999) ("[I]ssues may be divided and tried separately, but a given issue may not be tried by different, successive juries."); *In re Paoli R.R. Yard PCB Litigation*, 113 F.3d 444, 452 n.5 (3d Cir. 1997) (same). Bifurcating a case

---

[5] The Seventh Amendment provides, in full:

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.

into separate trials on liability and damages, however, does not run afoul of the Seventh Amendment simply because separate juries may consider some of the same evidence. The reexamination prohibition "is not against having two juries review the same *evidence*, but rather [it is] against having two juries *decide* the same *essential issues*." *Paine, Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 587 F. Supp. 1112, 1117 (D. Del. 1984); *see also Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1126 (7th Cir. 1999) ("While [separate] juries can examine overlapping evidence, they may not decide factual issues that are common to both trials and essential to the outcome."). Separate trials only violate the Seventh Amendment where they involve "interwoven" issues that cannot be resolved without revisiting, and effectively re-deciding, the same factual questions in each. *See Gasoline Products*, 283 U.S. at 500; *see also Houseman*, 171 F.3d at 1127.

In this case, the issues of causation and damages are not so "interwoven" that they must be tried together, at least on the current record. In fact, the liability jury will not be required to decide any issues concerning damages when considering causation. Instead, on this record, the liability jury only need determine whether or not *all* of the flooding experienced by Plaintiffs was caused by the failure of the Kingsfield Road Dam. If the evidence presented at the liability trial leads the jury to conclude that the Dam failure did not cause any of the flooding in the subject

neighborhoods, or that it caused some but not all of the flooding, then Plaintiffs will have failed to carry their burden and the matter will end. If the liability jury decides in Plaintiffs' favor, then class members will have the opportunity to proceed with individual actions on the issue of damages (*i.e.*, the financial impact from the amount of water in each home). Importantly, the liability jury's factual finding with respect to causation will become the law of the case and thus will be removed from consideration by subsequent juries. *See Parks v. Poindexter*, 723 F.2d 840, 844 (11th Cir. 1984) (observing that issues decided in first half of bifurcated trial become law of the case, to which "issue preclusion or collateral estoppel" apply); *see also In re Innotron Diagnostics*, 800 F.2d 1077, 1085 (Fed. Cir. 1986) (same). If there is a damages phase, subsequent juries will not, as Defendants assert, "need to engage in an in-depth examination of whether individual houses experienced . . . flooding that was either caused or made more severe by the Dam's failure." ECF No. 98 at 20 (internal quotations omitted). The fact that the failure of the Dam caused all of the flooding will have been decided already and Defendant will not be permitted to reargue that question. *See, e.g.*, *Parks*, 723 F.2d at 844; *Innotron*, 800 F.2d at 1085; *Rhone-Poulenc*, 51 F.3d at 1303 (indicating that decision by first jury in bifurcated case would bind subsequent juries). The subsequent juries' sole task will be to determine the amount of damage attributable to the flood waters in each plaintiff's home. This damages inquiry is legally and factually independent of causation, which

focuses on how the flood waters came to be in Plaintiffs' homes in the first place. Because the different juries will be asked distinct questions, and because the damages juries will not need to reexamine the conclusions of the liability jury, the Seventh Amendment will not be violated by bifurcation of causation and damages in this case.

In sum, the Court concludes that, based on the current record, Plaintiffs have shown that the Rule 23 criteria are satisfied and that certification of a liability-only class is appropriate in this case. A bifurcated class action is superior to other available methods for the fair and effective adjudication of this matter—separate trials will reduce jury confusion, avoid undue prejudice to both sides, expedite the date of the liability trial and possibly avoid additional expenses if damages discovery and trials become unnecessary.

Accordingly, it is **ORDERED** that:

1. Defendant's Motion for Reconsideration, ECF No. 97, is **DENIED**.

2. Within seven days of the date of this Order, the parties are directed to notify the Court of their respective positions on the joint proposed notice that was filed on April 7, 2017.[6]

---

[6] In the Joint Notice of Filing Proposed Class Notice, the parties stated that they "are in general agreement" with the proposed notice that was provided. *See* ECF No. 96 at 2. At that time, Defendant asked that no class notice be approved or issued until after the Court ruled on the motion for reconsideration. *Id*. Plaintiffs were unable to state whether they agreed with Defendant's position on the class notice. *Id*. at 2-3. The Court now requires clarification of the parties' final positions on the proposed notice, in light of the instant ruling.

3. By separate order, the Court will schedule a case management conference to discuss the progression of the litigation going forward.

**DONE** and **ORDERED** on this 21st day of May, 2017.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**CHIEF UNITED STATES DISTRICT JUDGE**