# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

JOHN NAVELSKI, LINDA
NAVELSKI, ERICK ALEXANDER,
JACON HUTCHINS, AMBER
HUTCHINS, JEANNE HENDERLY,
RICHARD BULLARD and BEVERLY
BULLARD on their behalf and those
others similarly situated,

              CASE NO. 3:14-CV-00445

 Plaintiffs,

              Judge M. Casey Rodgers

v.

          Magistrate Judge Charles J. Kahn

INTERNATIONAL PAPER
COMPANY,

 Defendant.

UNITED SERVICES AUTOMOBILE
ASSOCIATION (A RECIPROCAL
INTER-INSURANCE EXCHANGE), a
Texas Corporation, and USAA
GENERAL INDEMNITY COMPANY,
a Texas Corporation,

 Plaintiff-Intervenors,

v.

INTERNATIONAL PAPER
COMPANY,

 Defendant.

_____

## UNITED SERVICES AUTOMOBILE ASSOCIATION (A RECIPROCAL INTER-INSURANCE EXCHANGE) AND USAA GENERAL INDEMNITY COMPANY'S MOTION TO INTERVENE

Pursuant to Federal Rule of Civil Procedure ("FRCP") 24, Plaintiff-Intervenors United Services Automobile Association (A Reciprocal Inter-Insurance Exchange) ("USAA") and USAA General Indemnity Company ("GIC") (collectively as "Plaintiff-Intervenors"), by and through their attorneys of record, move this Court for an Order permitting them to intervene in these proceedings, in order to assert the claims set forth in their proposed Complaint in Intervention, which is attached to this Motion as Exhibit A.  Plaintiff-Intervenors move for mandatory and permissive intervention for the purpose of protecting and prosecuting their subrogation claims against Defendant International Paper Company arising out of insurance payments made to their insureds, members of this current certified class action (the "Insureds"), for damages sustained to the Insureds' personal property and/or dwellings stemming from Defendant International Paper Company's wrongful acts and/or omissions in the maintenance and operation of the Kingsfield Road Dam located in Escambia County, Florida.

## PROCEDURAL BACKGROUND

Plaintiffs, John Navelski, Linda Navelski, Erick Alexander, Jacon Hutchins, Amber Hutchins, Jeanne Henderly, Richard Bullard and Beverly Bullard, on behalf of themselves and all other similarly situated ("Plaintiffs"), brought this class

2

action lawsuit against Defendant International Paper Company for damages sustained from the catastrophic flooding that occurred on April 29 through April 30, 2014 when the Kingsfield Road Dam, owned, constructed, maintained, and/or operated by Defendant International Paper Company, collapsed due to Defendant International Paper Company's failure, *inter alia*, to properly maintain and/or operate the dam (the "Occurrence"). *See* Plaintiffs' First Amended Complaint, ECF No. 38.

On March 25, 2017, this Court granted in part and denied in part Plaintiffs' Motion for Class Certification by certifying a liability-only class under FRCP 23(b)(3) with respect to Plaintiffs' negligence, nuisance, trespass, and strict liability claims and bifurcating the damages phase of the lawsuit into separate trials pending the determination of Defendant International Paper Company's liability, if any. *See* Order on Plaintiffs' Motion for Class Certification at pg. 58, ECF No. 93. This Court certified the liability class as follows:

> All persons who, as of April 29, 2014, owned real property in the Bristol Park, Bristol Woods, Bristol Creek, or Ashbury Hills Subdivisions in Cantonment, Florida, as specifically delineated in Plaintiffs' Motion for Class Certification, Exhibit A, ECF No. 61-1 at 2.

*Id.* To ascertain the members of the liability class, Plaintiffs provided a survey sketch and legal description depicting the boundary lines for the above-referenced subdivisions located in Escambia County. *See* Plaintiff's Motion for Class

3

Certification at ¶2, ECF No. 61-1.

The Plaintiffs did not reveal in their pleadings, and the certified liability class does not state, that certain members of the class were covered by personal property and/or homeowners insurance for damages incurred from the Occurrence. *See* Defendant's Answer to Amended Complaint, ECF No. 39, Plaintiff's Motion for Class Certification, ECF No. 61, and Order on Plaintiffs' Motion for Class Certification, ECF No. 93. Moreover, the Plaintiffs did not reveal in their pleadings, and the certified liability class does not account for, the existence of subrogation rights arising from benefits provided by such personal property and/or homeowners insurance that covered the damages sustained by these class members in the Occurrence. *Id.*

On September 19, 2017, this Court entered an Order granting Plaintiff's Renewed Motion for Approval of Class Notice Plan requiring, *inter alia*, that Plaintiffs, through Epperly Re:Solutions, must mail the Court Approved Legal Notice of Class Action (ECF No. 124-3) to each class member within seven days of the aforesaid Order and setting the deadline for a class member to request exclusion from the class at 45 days from the date the Class Notice is mailed. *See* Order on Plaintiff's Renewed Motion for Approval of Class Notice Plan, ECF No. 125.

## THE PLAINTIFF-INTERVENORS AND THEIR SUBROGATED CLAIMS

Plaintiff-Intervenors are two of the largest and leading nationwide insurance carriers that offer a range of personal property and casualty insurance to their military customers and family members including, but not limited to automobile, homeowners, renters', and umbrella policies of insurance.  Prior to the Occurrence, Plaintiff-Intervenors had issued numerous personal property and casualty policies of insurance to the Insureds, described below.  These policies of insurance were in full force and effect at the time of the Occurrence and covered all or part of the damages that were sustained therefrom by the Insureds.

Pursuant to the provisions of these policies of insurance, Plaintiff-Intervenors made payments to or on behalf of the Insureds for the covered damages caused by the Occurrence and became subrogated to the rights of the Insureds to recover those payment amounts from Defendant International Paper Company. Plaintiff-Intervenors now seek to preserve and prosecute their subrogation claims against Defendant International Paper Company in the place, in whole or in part, of the following Insureds[1]:

---

[1] For a description of the Insureds' residential addresses at the time of the Occurrence, please see Exhibit A, pp. 5-6, ¶12(a)-(g), Complaint for Intervention.

| Insured | Plaintiff-Intervenor | Claim No. | Loss Description | Damages |
|---|---|---|---|---|
| Justin Schaffer | GIC | 1048594-525 | Residence and Personal Property Within | $287,430.48 |
| | USAA | 1048594-526 | 2010 Ford F150 | $18,006.25 |
| | USAA | 1048594-527 | 2008 Toyota Avalon | $11,994.25 |
| Kenneth Morris | USAA | 1165281-529 | 2014 Hyundai Santa Fe | $22,078.25 |
| | USAA | 1165281-530 | 2007 Hyundai Santa Fe | $9,584.25 |
| | USAA | 1165281-531 | 2002 Ford F250 | $7,806.57 |
| David Pearce | GIC | 14592996-37 | Residence and Personal Property Within | $186,428.83 |
| | USAA | 14592996-38 | 2012 BMW 328I | $37,128.39 |
| | USAA | 14592996-39 | 2011 Chevy Traverse | $25,024.2 |
| | USAA | 14592996-40 | Jewelry | $6,000.00 |
| Charlie Code | USAA | 2022626-11 | 2013 Infiniti JX35 | $29,963.25 |
| | USAA | 2022626-12 | 2002 Chevy Silverado | $5,111.75 |
| | GIC | 2022626-13 | Residence and Personal Property Within | $181,029.65 |
| Martin Stephens | USAA | 18885430-7 | 2011 Toyota Highlander | $11,204.75 |
| | USAA | 18885430-8 | 2005 Ford F150 4x4 SuperCrew | $14,572.75 |

| John Nickell | GIG | 35597380-1 | 2002 Dodge Dakota 4x2 Quad Cab Sport | $5,333.75 |
| | GIC | 35597380-2 | 2011 Chevy Equinox 4x2 LTZ | $19,082.33 |
| James Westbrook | USAA | 8982678-13 | Residence and Personal Property Within | $181,397.89 |
| | USAA | 8982678-14 | 2000 Jeep Wrangler | $8,478.18 |
| | USAA | 8982678-15 | 2010 Toyota Highlander | $23,405.72 |
| Total | | | | **$1,091,061.49** |

## MEMORANDUM

## I.  Plaintiff-Intervenors' Subrogation Rights, Generally.

Subrogation is a legal construct simply described as the substitution of one person in the place of another to assert that person's lawful claim or rights against a third party.  *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 98 (2013). Subrogation may be founded on "equitable principles independent of any agreement" or based upon a contract, such as an insurance policy, incorporating those principles therein.  *Id*.

In the insurance context, Florida law recognizes the validity of subrogation rights in both the contractual and equitable form.  *Hough v. Huffman*, 555 So. 2d 942, 945 (Fla. Dist. Ct. App.), approved sub nom. *Aspen v. Bayless*, 564 So. 2d 1081, 1082 (Fla. 1990) ("After an insurance company has paid a loss on behalf of its insured, it is entitled to subrogation either by express contract rights, or

7

by equitable subrogation by operation of law.") The underlying rationale for insurance subrogation is to "afford relief where one is required to pay a legal obligation which ought to have been met, either wholly or partially, by another." C*as. Indem. Exch. v. Penrod Bros.*, 632 So. 2d 1046, 1047 (Fla. Dist. Ct. App. 1993), quoting *Underwriters at Lloyds v. City of Lauderdale Lakes*, 382 So. 2d 702, 704 (Fla. 1980).

Otherwise, insureds would receive a windfall and become unjustly enriched through the receipt of both the proceeds of the insurance policy and a judgment rendered against the tortfeasor. Moreover, if insureds were unable to seek relief from the tortfeasor, the tortfeasor would escape liability notwithstanding its legal obligation arising from its tortious conduct. Subrogation is the lawful mechanism that counteracts these problems that arise in a society heavily dependent upon the insurance industry to protect against financial loss.

## II.   Plaintiff-Intervenors are the Holders of Subrogation Rights and Must be Deemed "Real Parties in Interest."

FRCP 17(a) requires that every "action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a). In *United States v. Aetna Cas. & Sur. Co.*, the United States Supreme Court held that a subrogated insurance carrier who has paid either a portion or the entire amount of the loss to its insured qualifies as a real party in interest. 338 U.S. 366, 380 (1949) ("[FRCP 17(a)] provides that '[e]very action shall be prosecuted in the name of the real party in

8

interest,' and of course an insurer-subrogee, who has substantive equitable rights, qualifies as such.")

If the insurer pays an entire loss suffered by its insured, the insurer is the only real party in interest and must sue in its own name.  *Id.* at 381.  Where an insurer pays only part of the loss, both the insured and insurer have substantive rights against the tortfeasor and are classified as the real parties in interest. *Id.*  In the latter situation, both insured and insurer are deemed to "'own' portions of the substantive right to recover and should appear in the litigation in their own names." *Id*.

In cases involving either partial or total subrogation claims, the pleadings should reveal and assert the interests of the plaintiff-insured and the subrogation interests held by the insurers. *Id.* at 382.  The plaintiff-insured's recovery may then be reduced to the extent his or her claim has been subrogated by the insurer thereby preventing a windfall to the insured and ensuring the tortfeasor is responsible for the full amount of its liability.  For this reason, where there may be two or more real parties in interest relative to a subrogated claim, the common practice is for the insured to initiate a lawsuit against the tortfeasor while the subrogating carrier intervenes into the action at a later time under the FRCP 17(a) mandate.[2]  Courts

---

[2] *Maricco v. Meco Corp.*, 316 F. Supp. 2d 524 (E.D. Mich. 2004); *Kruegar v. Cartwright*, 996 F.2d 928 (7th Cir. 1993); *Wattles v. Sears, Roebuck and Co.*, 82 F.R.D. 446 (D. Nebraska, 1979).

routinely acknowledge the existence of a right to intervene to protect subrogation rights arising from insurance payments.[3]

The pleadings filed by the Plaintiffs in this action and the liability class definition certified by this Court do not disclose the names of all the real parties in interest to identify the holders of subrogation interests affected by this instant action.  As Plaintiff-Intervenors became subrogated to the amounts paid to the Insureds for the losses caused by the Occurrence, Plaintiff-Intervenors are real parties in interest under FRCP 17(a) and seek intervention to substitute, in whole or in part, their subrogation rights that have been implicated by the Plaintiffs' claims for that of the Insureds.  Intervention will allow Plaintiff-Intervenors to preserve and prosecute their subrogation claims against Defendant International Paper Company in a judicially efficient manner and without prejudice to the existing parties.

---

[3] *Kruegert*, 996 F.2d at 932 (7th Cir. 1993); *see also*, e.g.*, Johnson v. Lee*, 460 F.2d 1053, 1054-55 (5th Cir. 1972) (intervention as of right permitted to allow workers' compensation carrier to protect its subrogation interests); *Smith Petroleum Serv., Inc. v. Monsanto Chem. Co.*, 420 F.2d 1103, 1114-16 (5th Cir. 1970) (affirming intervention of workers' compensation carrier to protect its subrogation rights); *Kelley v. Summers*, 210 F.2d 665, 673 (10th Cir. 1954) (noting that, being subrogated, "the insurance company had sufficient interest in the subject matter of the litigation to intervene as a matter of right").

### III. Plaintiff-Intervenors Satisfy The Standards For Intervention As Of Right

Federal Rule of Civil Procedure 24(a)(2) provides that upon timely application, anyone shall be permitted to intervene in an action:

> When the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

*Stone v. First Union Corp.*, 371 F. 3d 1305, 1308-09 (11th Cir. 2004).

Here, Plaintiff-Intervenors have met all of the requirements of FRCP 24(a)(2) for intervention as of right. Plaintiff-Intervenors' Motion to Intervene is timely because they promptly filed this motion upon learning of the recent class certification, and their intervention will not disrupt the proceedings or prejudice either party. Plaintiff-Intervenors' subrogation claims against Defendant International Paper Company constitute a substantial interest, particularly given the fact that Plaintiff-Intervenors are "real parties in interest" pursuant to the Rule 17(a) directives. Absent intervention, Plaintiff-Intervenors' subrogation interest will be impaired, as a practical matter, upon the adjudication of the Plaintiffs' claims pursuant to a final judgment through the doctrine of res judicata. Finally, Plaintiff-Intervenors' interests are not adequately represented by the existing parties to this lawsuit as the pleadings and class definition do not account for Plaintiff-Intervenors' subrogation rights, described herein, thereby precluding

11

Plaintiff-Intervenors from preserving their subrogation claims in full.

A.      **Plaintiff-Intervenors' Motion to Intervene is Timely.**

The Eleventh Circuit has identified several factors relevant to determining

whether a request for intervention is timely:

> (1) the length of time during which the proposed intervenor knew or
> reasonably should have known of the interest in the case before
> moving to intervene; (2) the extent of prejudice to the existing parties
> as a result of the proposed intervenor's failure to move for
> intervention as soon as it knew or reasonably should have known of
> its interest; (3) the extent of prejudice to the proposed intervenor if the
> motion is denied; and (4) the existence of unusual circumstances
> militating either for or against a determination that their motion was
> timely.

*United States v. Jefferson Cty.*, 720 F.2d 1511, 1516 (11th Cir. 1983), citing

*Stallworth v. Monsanto Co.*, 558 F.2d 257, 263 (5th Cir. 1977).

The United States Supreme Court has emphasized that "[t]imeliness is to be

determined from all the circumstances." *NAACP v. New York*, 413 U.S. 345, 366

(1973). This Circuit has also recognized that the requirement of timeliness "must

have accommodating flexibility toward both the court and the litigants if it is to be

successfully employed to regulate intervention in the interest of justice."  *Chiles v.*

*Thornburgh* at 1213, citing *McDonald v. E.J.Lavino Co.*, 430 F.2d 1065, 1074 (5th

Cir. 1970).   Thus, absolute measures of timeliness, like the amount of time

between institution of the action and intervention, are not the center of the

timeliness inquiry.  *Meek v. Metro. Dade Cnty., Fla.*, 985 F.2d 1471, 1479 (11th

Cir.1993) abrogated on other grounds by *Dillard v. Chilton Cnty. Comm'n*, 495

F.3d 1324 (11th Cir.2007).

> **i.   Plaintiff-Intervenors promptly filed this Motion to Intervene upon learning of the adverse affect to their subrogation interests from the recently certified liability class.**

The Eleventh Circuit has held that the relevant inquiry into the first prong of

the timeliness determination turns on when the potential intervenor knew or should

have known that its interests could be adversely affect by litigation without its

participation.   *United States v. Jefferson Cty.*, 720 F.2d 1511, 1516 (11th Cir.

1983), citing *Stallworth v. Monsanto Co.*, 558 F.2d 257, 263 (5th Cir. 1977).

("Mere knowledge of the pendency of an action, without appreciation of the

potential adverse effect and adjudication of that action might have on one's

interests, does not preclude intervention.").

In *Campbell v. Hall-Mark Electronics Corp.*, the Eleventh Circuit denied the

Secretary of Labor's motion for intervention to oppose a settlement order between

the private litigants, which was agreed upon by the parties and approved by the

district court. 808 F.2d 775 (11th Cir. 1987).  The Secretary had been part of the

consolidated action against the defendant but had withdrawn his lawsuit prior to

settlement after having worked closely with the private litigants on discovery

matters, trial strategy, and settlement negotiations.   In evaluating the first

timeliness factor, the *Campbell* court held that the Secretary's "close contact with

13

the private plaintiffs for virtually the entire pendency of the litigation . . . [and] actual knowledge that the parties were proceeding toward a settlement" refuted the Secretary's claim that he was unaware of the potential adverse effects settlement might have on his own interests. *Id.* at 777-78.

Here, Plaintiff-Intervenors first became aware that their subrogation interests would be adversely affected in this litigation when this Court certified the liability class on September 19, 2017. *See* Order on Plaintiffs' Motion for Class Certification, ECF No. 93.  The certified class definition only encompasses "[a]ll persons who, as of April 29, 2014, owned real property" in the effected subdivisions and does not take into consideration the interests of holders of subrogation rights who made payments to members of the class pursuant to personal property and/or casualty policies of insurance covering damages caused by the Occurrence.

Unlike the Secretary in *Campbell*, Plaintiff-Intervenors are outsiders to the present litigation and were unaware of the practical effects this action would have on their subrogation interests until the class was recently certified.  Upon discovering their interests were not encompassed within the class definition, Plaintiff-Intervenors promptly filed this Motion within the time allotted for class members to opt out of the class action proceedings.

### ii.    The lack of prejudice to the existing parties.

Under the second prong of the timeliness analysis, the prejudice to the original parties only concerns that "which would result from the would-be intervenor's failure to request intervention as soon as he knew or reasonably should have known about his interest in the action. *Stallworth*, 558 F.2d at 265. The focal point to this analysis involves whether the delay in intervention would impede the progress of the overall litigation. *See Diaz v. Southern Drilling Corp.*, 427 F.2d 1118, 1125-26 (5th Cir. 1970) (motion to intervene more than a year after the action was commenced was timely when there had been no legally significant proceedings other than the completion of discovery and intervention would not cause any delay in the process of the overall litigation).

In this matter, the existing parties will suffer no prejudice from Plaintiff-Intervenors' minor delay in seeking intervention.  The liability class was certified on September 19, 2017. *See* Order on Plaintiffs' Motion for Class Certification, ECF No. 93. The time for class members to request exclusion from the class has not yet elapsed.  *See* Order on Plaintiff's Renewed Motion for Approval of Class Notice Plan, ECF No. 125.  Plaintiff-Intervenors' claims are virtually identical to that of the Plaintiffs' and involve the same facts and conduct alleged in the First Amended Complaint.  *Infra* Section III(B).  In other words, allowing Plaintiff-Intervenors to intervene would not raise any new issues to the determination of

Defendant International Paper Company's liability.  Under the current scheduling order, trial on the liability phase is not scheduled until February 20, 2018. *See* Scheduling Order, ECF No. 119.  Accordingly, Plaintiff-Intervenors' decision to intervene at this point in the litigation will not prejudice either party.

### iii.   The prejudice to the Plaintiff-Intervenors in the event intervention is denied.

The thrust of the inquiry into the prejudice to the potential intervenor absent intervention implicates the "extent to which a final judgment in the case may bind the movant even though he is not adequately represented by an existing party." *Jefferson*, 720 F.2d at 1517.  Sufficient prejudice will be found when the movant has an identity of interest with a party and that party's representation may be inadequate to protect the movant's interest. *Id.*

While the original parties to this litigation will not be prejudiced by the Plaintiff-Intervenors' intervention, Plaintiff-Intervenors will be prejudiced if their request for intervention is denied.  As will be discussed *infra*, Plaintiff-Intervenors are in privity and share an identity of interest with the Insureds by virtue of their subrogor-subrogee relationship.   Under the doctrine of res judicata, a final judgment rendered in this action may bind the Plaintiff-Intervenors even without adequate representation of their subrogation interests by an existing party and without Plaintiff-Intervenors' participation in this matter.

Moreover, denying Plaintiff-Intervenors' Motion to Intervene would lead to

16

protracted litigation with their Insureds over the extent of Plaintiff-Intervenors'
entitlement to recoup any settlement or judgment proceeds obtained from
Defendant International Paper Company.   This subsequent litigation with the
Insureds would further congest the court system and delay the complete
adjudication of all claims arising from the Occurrence.   Thus, the inclusion of
Plaintiff-Intervenors' subrogation claims by way of intervention would strengthen
the representation of the interests involved in this matter and provide its fullest
protection.   By avoiding multiple lawsuits and coordinating discovery on liability
and damages, intervention will lend efficiency to the proceedings.

     **B.**     **Plaintiff-Intervenors are Subrogated to a Substantial Extent to
the Same Protectable Rights and Interests that the Certified
Liability Class Assert in These Proceedings.**

For an applicant's interest in the subject matter of the litigation to be
cognizable under Rule 24(a)(2), it must be "direct, substantial and legally
protectable." *See Georgia v. U.S. Army Corps of Engineers*, 302 F.3d 1242, 1249
(11th Cir. 2002); s*ee also Chiles v. Thornburgh*, 865 F.2d 1197, 1212-13 (11th Cir.
1989) (noting that the focus of a Rule 24 inquiry is "whether the intervenor has a
legally protectable interest in the litigation.")   The inquiry on this issue "is 'a
flexible one, which focuses on the particular facts and circumstances surrounding
each [motion for intervention].'"   *Chiles*, 865 F.2d at 1214 (quoting *United States
v. Perry County Bd. of Educ.*, 567 F.2d 277, 279 (5th Cir. 1978)).   A real party in

interest to the current litigation meets the requisite legally protectable interest for intervention as of right. *Athens Lumber Co. v. Fed. Election Comm'n*, 690 F.2d 1364, 1366 (11th Cir. 1982) ("In essence, the intervenor must be at least a real party in interest in the transaction which is the subject of the proceeding.").  As discussed in length in section II above, the holder of a subrogation right constitutes a real party in interest under FRCP 17(a).

Plaintiff-Intervenors' Complaint in Intervention, attached as Exhibit A, asserts identical claims for relief that arise out of the exact same facts and course of conduct alleged in Plaintiffs' First Amended Complaint (ECF No. 39), but through the subrogation context, which are not represented in the current proceedings. Plaintiff-Intervenors and Plaintiffs were both damaged by the same conduct by Defendant International Paper Company.  Plaintiff-Intervenors are real parties in interest to the instant action as holders of subrogation rights arising out of insurance payments made to the Insureds for the real and personal property damages caused by Defendant International Paper Company.   Accordingly, Plaintiff-Intervenors have a sufficient interest to warrant intervention as of right in Plaintiffs' class action lawsuit.

**C.    Plaintiff-Intervenors' Substantial Legal Interest in Their Subrogated Claims Will be Impaired if Intervention is Denied.**

Under FRCP 24, the threshold level of impairment to warrant intervention is set relatively low as the rule refers to impairment "as a practical matter."  Thus,

courts are not limited to considering consequences of a strictly legal nature in their determination of impairment. *Natural Resources Defense Council, Inc. v. U.S. Nuclear Regulatory Commission*, 578 F.2d 1341, 1345 (1978) ("The court may consider any significant legal effect in the applicant's interest and it is not restricted to a rigid res judicata test.")   Absent intervention, not only will Plaintiff-Intervenors suffer impairment to their subrogation claims through the doctrine of res judicata but also, as practical matter, Plaintiff-Intervenors will realize an extensive reduction to their subrogation interests in seeking reimbursement from the Insureds through the judgment or settlement proceeds obtained in this action.

A party denied access to a current lawsuit through intervention will have its legal interest impaired when the possibility exists that the excluded party may be bound by a final judgment rendered in the pending action.  *See Jefferson,* 720 F.2d at 1517.   Under Florida law, res judicata precludes the litigation of claims that were or could have been brought in a prior proceeding when there is 1) identity of the thing sued for; (2) identity of the cause of action;(3) identity of persons and parties to the action; and (4) identity of quality in persons for or against whom the claim is made. *See The Florida State Bar v. St. Louis,* 967 So.2d 108, 119, 32 Fla. L. Weekly S191 (Fla. 2007); *see also QBE Insurance Corp. v. Jorda Enterprises, Inc.*, 2012 WL 12844302, *12 (S.D. Fla. 2012).  "[T]he term parties as used in the doctrine of res judicata includes parties and their privies."  *Jones v. Bradley*, 366

So.2d 1266,1267 (Fla. Dist. Ct. App. 1979). The identity of causes of action is not defined by the relief sought but rather the "similarity of the facts essential to the maintenance of both actions." *Pumo v. Pumo*, 405 So.2d 224, 226 (Fla. District. Court. App 1981).

In *QBE Insurance*, an insurance carrier brought a subrogation claim against a subcontractor for payments made under a policy of insurance covering water damage to the carrier's insured condominium complex resulting from a pipe that was improperly installed by the subcontractor on the condominium property. *QBE Insurance Corp.*, 2012 WL 12844302. The *QBE* court barred the carrier's subrogation action under the doctrine of res judicata because the carrier's insured had previously settled its own lawsuit against the subcontractor and subsequently dismissed the lawsuit with prejudice. *Id.*

In reaching its decision, the *QBE* court opined that the carrier, as the insured's subrogee, was in privity with its insured. *Id.* at *13 ("As a subrogee, QBE stands in the shoes of its subrogor: QBE is entitled to all of the rights of its subrogor, and QBE suffers all of the liabilities to which the subrogor would be subject."); *See also Jones*, 366 So.2d at 1267 (holding, in the context of defensive application of res judicata, a subrogee is in privity with its subrogor). The *QBE* court further reasoned that the subrogated carrier's claims and the insured's claims shared the same set of facts regarding the subcontractor's installation of the water

pipe. *Id*. Therefore, the insurance carrier was bound by its insured's dismissal of the underlying lawsuit with prejudice.[4]

Plaintiff-Intervenors' ability to protect their substantial legal interests would be impaired, absent intervention, through the defensive application of res judicata. As subrogating carriers, Plaintiff-Intervenors are in privity with the Insureds and share the same set of facts giving rise to the causes of actions alleged in the current class action. Plaintiff-Intervenors will be precluded from initiating their own lawsuit against Defendant International Paper Company for their subrogation claims upon the final disposition of this class action.

Furthermore, Plaintiff-Intervenors will be deprived of its ability to engage in meaningful settlement negotiations with the existing parties during the liability or damages phase of the lawsuit. As will be discussed below, Plaintiff-Intervenors' legal interests are not represented by either party and there is no indication that the full amount of Plaintiff-Intervenors' subrogation claims will be adequately

---

[4] In Florida, it is well settled law that insurers are bound by prior determinations involving their insureds on related claims. *Gould v. Weibel*, 62 So.2d 47, 49 (Fla. 1952) ("The judgments in the instant suits will be final and conclusive and will bar any further action on the same claim by either the plaintiffs or the insurers, even though the insurers had not been joined as parties plaintiff."); *Jones*, 366 So.2d 1266 (Insurer is subrogated to insured's right and limitations and defense of res judicata bars insurer from bringing second suit.); *Sentry Ins. v FCCI Mut. Life Ins. Co.* 745 So.2d 349, (Dist. Ct. App. Fla. 4th Dist. 1999) (Insurers are bound by a previous determination where they were "in privity with its insured and whose interests were not antagonistic to the insureds in the underlying suit.").

represented during settlement negotiations or at trial. Absent intervention, Plaintiff-Intervenors may be forced into prolonged litigation with their Insureds over the extent of reimbursement from any settlement or judgment proceeds, obtained without Plaintiff-Intervenors' participation, likely resulting in a substantially reduced recovery on their subrogation claims.

### D.      Plaintiff-Intervenors' Subrogation Interests Are Not Adequately Represented by the Parties.

The fourth and final element to justify intervention as of right is the inadequate representation of the proposed intervenor's interest by existing parties to the litigation. This element is satisfied if the proposed intervenor "shows that representation of his interest 'may be' inadequate." *Chiles*, 865 F.2d at 1214 (citing *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n. 10 (1972)). The burden on the proposed intervenor to show that existing parties cannot adequately represent its interest is "minimal." *Stone v. First Union Corp.*, 371 F. 3d 1305, 1311 (11th Cir. 2004); *U.S. Army Corps of Engineers*, 302 F.3d at 1259 (citing *Trbovich*, 404 U.S. at 538 n. 10). Any doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed intervenors because it allows the court to resolve all related disputes in a single action. *Lloyd v. Alabama Dep't of Corrections*, 176 F.3d 1336, 1341 (11th Cir. 1999); *Federal Sav. and Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993).

In *Maricco v Meco Corp.*, a subrogating health insurance carrier sought to intervene in an ongoing product liability suit to recover health care benefits paid to its insureds, the existing plaintiffs, from the defendant. 316 F.Supp.2d 524 (E.D. Mich. 2004). The defendant opposed intervention on the grounds that the plaintiffs adequately represented the carrier. In support of its position, the defendant noted that the plaintiffs specifically identified the medical expenses paid by the carrier as an element of their damages and never denied the existence of the carrier's subrogation interest in a portion of any potential recovery. *Id*. at 526.

Accepting these facts to be true, the *Maricco* court still rejected defendant's adequate representation contention because the "Plaintiffs ha[d] no particular incentive to seek these expenses as an element of damages [and, even if they did, Plaintiffs might have sought] to downplay or ignore this element of their claimed losses." *Id*. at 526-27. For these reasons, the *Maricco* court understood that, absent intervention, the carrier would run the risk of recouping only a substantially reduced portion of its subrogation interest in a subsequent proceeding against its insureds. *Id*. at 527 ("[I]f Plaintiffs, for whatever reason, fail to present evidence encompassing all of the medical expenses paid by their insurer, [the carrier] likely would confront considerable obstacles in seeking to recover this shortfall in a subsequent proceeding.") The court held that the carrier's participation in the products liability action was essential to ensure that its unique interest as subrogee

was properly protected and served.  *Id*. and at 530.

Unlike the plaintiffs in *Maricco*, the Plaintiffs have not identified Plaintiff-Intervenors or other holders of subrogation interests in their pleadings or in the certified class definition.  Moreover, Plaintiffs have not identified the amounts paid by Plaintiff-Intervenors as an element of Plaintiffs' damages.  As was the case in *Maricco*, neither party in this action purports to represent Plaintiff-Intervenors' subrogation interests arising from the Occurrence and the Plaintiffs have no incentive to preserve Plaintiff-Intervenors' subrogation claims in this class action lawsuit.  While Plaintiffs could ostensibly elect to represent Plaintiff-Intervenors' subrogation interests in lieu of intervention for purposes of settlement or trial, it is entirely plausible that Plaintiffs would either minimize or completely ignore elements of Plaintiff-Intervenors' subrogation claims during the liability or damages phase of this matter.  Plaintiff-Intervenors would be exposed to the same risk faced by the *Maricco* carrier in seeking recovery from a much limited pool of money with the Insureds in a subsequent proceeding than Plaintiff-Intervenors would if they were permitted to participate in this matter, likely resulting in a drastic shortfall.  Accordingly, Plaintiff-Intervenors are not adequately represented by the existing parties in this class action and are entitled to intervene as of right to ensure their subrogation rights are protected.

**IV. Alternatively, This Court Should Allow Plaintiff-Intervenors to Intervene Permissively Under Rule 24(b) of the Federal Rules of Civil Procedure.**

Permissive intervention is warranted "when an applicant's claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b)(1)(B).  In exercising its discretion, this Court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).  The Eleventh Circuit has established a two-part test to guide the Court's discretion as to whether a party may intervene pursuant to Rule 24(b): the applicant must show that "(1) his application to intervene is timely; and (2) his claim or defense and the main action have a question of law or fact in common."  *Chiles*, 865 F.2d at 1213 (citing *Sellers v. United States*, 709 F.2d 1469, 1471 (11th Cir. 1983).  Courts are more willing to grant permissive intervention when the proposed intervenor would strengthen the interests of the class without prejudicing the defendants.  *Christy v. Hammel*, 87 F.R.D. 381, 394 (D.C.Pa. 1980); *Groves v. Insurance Company of North America*, 433 F.Supp. 877, 888-89 (E.D.Pa. 1977).  In a close case, courts should favor permissive intervention.  *Id.*

As discussed above, the Plaintiff-Intervenors' motion for intervention in this litigation is timely and the Plaintiff-Intervenors' participation will neither unduly delay the proceedings nor prejudice the adjudication of the rights of the original

parties.   Additionally, the Plaintiff-Intervenors' subrogation claims against Defendant International Paper Company are identical and share common questions of law and fact with the Plaintiffs' claims.  Indeed, Plaintiff-Intervenors' proposed Complaint in Intervention incorporates the same facts and causes of action alleged in Plaintiffs' First Amended Complaint. *See* Plaintiffs' First Amended Complaint, ECF No. 38.

Intervention will promote efficiency and consistency by resolving related issues and claims in a single proceeding.  In this case, denial of intervention will in all likelihood create additional litigation and impair Plaintiff-Intervenors' ability to protect their subrogation claims.  Intervention will strengthen the representation of the interests involved in this matter and provide its fullest protection while avoiding unnecessary litigation by enabling this Court to address important issues in this case only once.  Accordingly, even if intervention as of right is denied, Plaintiff-Intervenors meet the requirements for permissive intervention.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(K), Plaintiff-Intervenors respectfully request oral argument not to exceed one hour in length.

## CONCLUSION

For the foregoing reasons, the Court should grant the Plaintiff-Intervenors' Motion to Intervene (i) as a matter of right pursuant to Rule 24(a)(2) of the Federal

Rules of Civil Procedure or, in the alternative, (ii) permissively pursuant to Rule

24(b) of the Federal Rules of Civil Procedure.

Respectfully submitted,

CLERKIN, SINCLAIR & MAHFOUZ, LLP

*/s/Patrick Clerkin*_____
BY:  Patrick Clerkin, Esq. (*pro hac vice*)
     Texas Bar No. 24040702
     Aaron S. Imhoff, Esq. (*pro hac vice*)
     California Bar No. 310743
     530 B Street, 8th Floor
     San Diego, CA 92101
     Telephone: 619-308-6550
     Fax: 619-923-3143
     pclerkin@clerkinlaw.com
     aimhoff@clerkinlaw.com
     Attorneys for Plaintiff-Intervenors

DATED:  November 9, 2017

## LOCAL RULE 7.1(D) CERTIFICATE

The undersigned hereby certifies that an attorney conference is not required under Local Rule 7.1(B) as this Motion to Intervene will determine the outcome of Plaintiff-Intervenors' case or claims as they pertain to this lawsuit.

## LOCAL RULE 7.1(F) CERTIFICATE

The undersigned hereby certifies that this Motion to Intervene contains 5,761 words.

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing was sent electronically via the Court's CM/ECF system on this 9th day of November, 2017 to all attorneys of record in this matter.

*/s/Patrick Clerkin*

Patrick Clerkin, Esq.
Attorneys for Plaintiff-Intervenors