# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

| | |
|---|---|
| JOHN NAVELSKI, LINDA NAVELSKI, ERICK ALEXANDER, JACOB HUTCHINS, AMBER HUTCHINS, JEANNE HENDERLY, RICHARD BULLARD, and BEVERLY BULLARD, on their own behalf and those others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>INTERNATIONAL PAPER COMPANY,<br><br>    Defendant. | Case No. 3:14-cv-00445 MCR/CJK |

## DEFENDANT INTERNATIONAL PAPER COMPANY'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF DAMAGES FROM THE CLASS TRIAL AND INCORPORATED MEMORANDUM OF LAW

Defendant International Paper Company ("IP") respectfully moves in limine for an order excluding evidence of damages from the class trial. In support of this motion, IP submits the following memorandum of law.

## TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................1

PROCEDURAL HISTORY...................................................................................1

ARGUMENT .........................................................................................................3

    I.    IP Anticipates That Plaintiffs Will Seek To Introduce Evidence Regarding Damages During The Class Trial .................................................3

    II.   Evidence Of Damages Is Not Relevant To The Issues In The Class Trial .......................................................................................................7

    III.  Any Probative Value Of Evidence Of Damages Is Substantially Outweighed By The Danger Of Unfair Prejudice, Confusing The Issues, Misleading The Jury, And Undue Delay..........................................9

CONCLUSION....................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bryan v. Whitfield*,
 No. 3:14-cv-341/MCR/EMT, 2015 WL 4429337 (N.D. Fla. July
 18, 2015) ...................................................................................................... 10

*Link v. Hall*,
 No. 3:08cv327/MCR/MD, 2011 WL 13232375 (N.D. Fla. Feb. 4,
 2011) .......................................................................................................... 9

*United States v. Mills*,
 704 F.2d 1553 (11th Cir. 1983) .................................................................... 9

*Wilson v. Attaway*,
 757 F.2d 1227 (11th Cir. 1985) .................................................................... 9

*Young v. Cty. of Cook*,
 No. 06 C 552, 2009 WL 2231782 (N.D. Ill. July 27, 2009) ............................ 7

**Rules**

Fed. R. Evid. 401 ............................................................................................. 7

Fed. R. Evid. 402 ............................................................................................. 7

Fed. R. Evid. 403 ............................................................................................. 9

# INTRODUCTION

The Court has certified an issues class to resolve the common aspects of Plaintiffs' claims and bifurcated damages issues for separate proceedings. The class jury will determine whether IP is legally responsible for all of the flooding within the class area on April 29–30, 2014. If the jury finds IP legally responsible for all of the flooding, damages will be determined on an individual basis in subsequent proceedings.

Although the class trial will be limited to questions about IP's conduct and the cause of the flooding, IP anticipates that Plaintiffs will seek to introduce evidence regarding individual class members' alleged emotional, physical, and economic damages during the class trial. The Court should exclude damages evidence from the class trial because that evidence is irrelevant to the issues to be decided during this phase of the case and because any probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, and undue delay.

# PROCEDURAL HISTORY

From the outset of this case, the Court has distinguished between common issues potentially susceptible to resolution on a class-wide basis and claimant-specific damages issues that can only be resolved in individual proceedings.

That distinction is reflected in this Court's Final Scheduling Order, which divided discovery in this case into two phases. The first phase was limited to liability and class-wide damages. ECF No. 41 at 1. The second phase will "encompass individual damages questions." *Id.* at 2.

At the end of the first phase of discovery, IP filed a motion to exclude testimony from Plaintiffs' expert on so-called "stigma" damages, which were the only class-wide damages that Plaintiffs asserted, ECF No. 77, as well as an accompanying motion for partial summary judgment on stigma damages, ECF No. 81. The Court granted IP's motion to exclude Plaintiffs' expert on stigma damages as well as IP's motion for partial summary judgment, explaining that "there [was] no admissible evidence that stigma damages in this case are capable of measurement on a classwide basis." ECF No. 93 at 38–39, 59–60.

In contrast, the Court concluded that, on the question whether IP is legally responsible—i.e., "liable"—for the flooding, common issues predominated, and it certified an issues class under Federal Rule of Civil Procedure 23(c)(4) to resolve that question. ECF No. 93 at 58. Because stigma damages were the only class-wide damages that Plaintiffs asserted, the Court emphasized that "if Plaintiffs establish liability, computation of damages will be a property-specific endeavor" pursued in "individual trials as to damages." *Id.* at 55, 56.

In a subsequent order, the Court reiterated that damages will not be resolved during the class proceedings: "[T]he liability jury will not be required to decide any issues concerning damages when considering causation. Instead, on this record, the liability jury only need determine whether or not *all* of the flooding experienced by Plaintiffs was caused by the failure of the Kingsfield Road Dam." ECF No. 105 at 11 (emphasis in original).

## ARGUMENT

Despite this Court's unambiguous rulings that damages issues will not be resolved on a class-wide basis, IP anticipates that Plaintiffs will attempt to introduce evidence bearing on individual class members' damages during the class trial. The Court should exclude that evidence.

I.  **IP Anticipates That Plaintiffs Will Seek To Introduce Evidence Regarding Damages During The Class Trial.**

During their depositions and at the evidentiary hearing, class members provided testimony about emotional distress, physical harm, and economic losses that is relevant, if at all, only to the issue of individual damages.

A number of class members testified about the emotions they experienced during the flood. For example, several class members described feeling panic and fear when their homes started to flood on the evening of April 29, 2014. *See, e.g.*, Ex. A, Cindy Kersey Dep. 22:3–11 (stating that she "panicked" when she first saw water in her home); Ex. B, Linda Navelski Dep. 49:16–50:1 (recalling that she was

scared when her daughter ran into her bedroom "hollering that water was coming in the house"); Ex. C, Amber Hutchins Dep. 69:21–70:11 (testifying that she was in "shock" when she discovered water in her home). Class members also described efforts to save pets and prized possessions. *See, e.g.*, Ex. D, Beverly Bullard Dep. 96:1–7 (stating that, as more water came into her home, she and her husband had to place their two small dogs on top of their kitchen cabinets); Ex. E, Jacob Hutchins Dep. 51:4–9 ("I was trying to grab a few pictures. I grabbed our television, a couple of small electronics . . . . There really wasn't much time.").

One class member, Amber Hutchins, recounted that, as the water levels rose, she and her husband gave each one of their children a clothes hamper and "told them to fit whatever clothes they could in it and whatever favorite toys." Ex. C, Amber Hutchins Dep. 79:1–8. The children, she added, were "really scared." *Id.* at 79:7–8. Another class member, Jeanne Henderly, brought a photograph to her deposition of people standing in floodwater, with a small child's feet in the foreground. Ex. F, Exhibit 10 to Jeanne Henderly Dep. at 10. The photograph is included on Plaintiffs' exhibit list for trial.

Class members also testified that they feared for their lives. When David Pavlock was asked whether he or his wife received an electrical shock from wading through the floodwater, he answered, "No, but we sure as hell were scared that that would happen." Ex. G, David Pavlock Dep. 39:4–8. Later in his

deposition, he said, "we didn't know if we [were] going to get electrocuted or drown[]." *Id.* at 42:25–43:1.  Beverly Bullard's husband, Richard Bullard, testified that during the flood, his wife "was worried about dying."  Ex. H, Richard Bullard Dep. 6:13–25; *see also id.* at 35:8–15 ("We had been calling 911 every 30 minutes.").  Linda Navelski recalled that, as the water levels rose, her grandson kept saying, "I don't want to die.  I don't want to die."  Ex. B, Linda Navelski Dep. 68:21–69:7.  Linda Navelski also brought a photograph to her deposition of the boat that her neighbor used to rescue the Navelski family.  Ex. I, Exhibit 8 to Linda Navelski Dep. at 6.  The photograph is on Plaintiffs' exhibit list.  And when Richard Tarbox was asked if the April 2014 flood was "more traumatic" than a previous flood, he answered, "Very much so. . . . one of the twins still won't talk about it.  Um, it—just a minute.  (Witness crying.)  My wife and the youngest, they believed that they were going to die that night."  Ex. J, Richard Tarbox Tr. 154:19–155:1.

Several class members testified that they or their family members were physically injured during the flood.  For example, John Navelski said that after the flood, his wife and daughter were covered in scrapes and bruises.  Ex. K, John Navelski Dep. 73:14–25.  Richard Tarbox stated that his son had to get stiches for a "gash" on his foot and that his mother-in-law had hypothermia.  Ex. L, Richard Tarbox Dep. 56:11–59:3.

5

In describing the aftermath of the flood, several class members testified about the damage to their homes, as well as the damage to the neighborhood. *See, e.g.*, Ex. K, John Navelski Dep. 71:2–15 (detailing the extensive repairs to his home, which totaled over $200,000); Ex. M, Jeanne Henderly Dep. 50:17–51:10 (testifying about the "tremendous" damage to Bristol Park properties); *id.* at 63:8–16 (recalling her "shock" and "devastat[ion]" at seeing damaged property on yards and sidewalks). Plaintiffs' exhibit list includes a photograph of residents' belongings piled outside their homes after the flood water receded, Ex. N, NAVELSKI_00030165, as well as a post-flood photograph of an overturned vehicle in the neighborhood, Ex. O, NAVELSKI_00030172. Class members also testified about having to stay in hotels while their homes were repaired. *See, e.g.*, Ex. P, Cindy Kersey Tr. 186:14–18 (stating that she stayed "off and on in hotels" for nine months).

As explained below, none of this evidence about individual class members' damages is relevant to the certified issues to be decided in the class trial, and all of it poses a danger of unfair prejudice, misleading the jury, confusing the issues, and undue delay.

**II.     Evidence Of Damages Is Not Relevant To The Issues In The Class Trial.**

The Court should exclude all evidence regarding class members' damages from the class trial because that individualized evidence is irrelevant to the certified issues to be decided by the class jury.

Evidence is admissible only if it is relevant, *see* Fed. R. Evid. 402, which means that it must have a "tendency to make a fact more or less probable than it would be without the evidence" and that the fact "is of consequence in determining the action." Fed. R. Evid. 401. The phrase "of consequence in determining the action" refers to "the kind of fact to which proof may properly be directed." Fed. R. Evid. 401 Advisory Committee's Notes to 1972 Proposed Rules.

At a trial limited to determining IP's legal responsibility for the flooding, the fact that class members may have sustained emotional, physical, or economic damages is not one to which proof may properly be directed. *See, e.g.*, *Young v. Cty. of Cook*, No. 06 C 552, 2009 WL 2231782, at *9 (N.D. Ill. July 27, 2009) ("Plaintiffs' motion to bar evidence or argument about damages is granted without objection; this is a liability-only trial."). The question for the class jury is limited to whether IP is legally responsible for all of the flooding within the class area, which will require the jury to resolve issues about IP's conduct and "whether or not *all* of the flooding experienced by Plaintiffs was caused by the failure of the Kingsfield Road Dam." ECF No. 105 at 11 (emphasis in original). Because "the

liability jury will not be required to decide any issues concerning damages when considering causation," *id.*—or when considering any of the issues regarding IP's conduct—evidence of class members' damages is not relevant to the class trial.

To be sure, evidence of the timing of the flooding of class members' properties may be relevant to the issue of causation that will be decided during the class trial. *See, e.g.*, Ex. D, Beverly Bullard Dep. 81:23–82:2, 117:8–14 (stating that the water started entering her home at 9:45 p.m., peaked before midnight, and started receding around 2:00 or 3:00 a.m.). Evidence of the extent of the flooding of class members' properties also may be relevant to the issue of causation. *See, e.g., id.* at 101:4–7 (stating that the water rose to between 5 ½ and 6 feet). IP has proposed that the parties stipulate to facts about the timing and extent of the flooding for this reason. If Plaintiffs are unwilling to stipulate to these facts, they can introduce evidence of the timing and extent of the flooding, but they must do so without also introducing evidence about emotional, physical, or economic damage to the individual class members. *See, e.g.*, Ex. Q, Erick Alexander Tr. 140:3–8 (describing a search and rescue team with "ropes and axes and life vests"); Ex. B, Linda Navelski Dep. 67:12–16 (describing a house of rescued residents and recalling that "[e]verybody was scared"); Ex. R, David Pavlock Tr. 171:25–172:4 (stating that he stayed at a motel for twelve weeks); Ex. C, Amber Hutchins Dep. 29:1–11 (describing the gutting of her home).

Because evidence regarding damages has no relevance to the issues in the class trial, the Court should enter an order excluding evidence of damages from that proceeding.

### III. Any Probative Value Of Evidence Of Damages Is Substantially Outweighed By The Danger Of Unfair Prejudice, Confusing The Issues, Misleading The Jury, And Undue Delay.

Even if evidence of class members' individual damages did have some marginal relevance to the issues in the class trial, it would still warrant exclusion because the prejudicial impact of that evidence far outweighs any conceivable probative value.

The Court may "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, [or] undue delay." Fed. R. Evid. 403. Although the Court should be "cautious" in excluding relevant evidence, *United States v. Mills*, 704 F.2d 1553, 1560 (11th Cir. 1983) (citation omitted); *Link v. Hall*, No. 3:08cv327/MCR/MD, 2011 WL 13232375, at *1 (N.D. Fla. Feb. 4, 2011), the Court's discretion under Federal Rule of Evidence 403 remains "wide," *Wilson v. Attaway*, 757 F.2d 1227, 1242 (11th Cir. 1985). The evidence of damages that IP anticipates that Plaintiffs will attempt to introduce during the class trial poses a serious danger of unfair prejudice, confusing the issues, misleading the jury, and undue delay that substantially outweighs any probative value.

"'Unfair prejudice,'" within the context of Rule 403, "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403 Advisory Committee's Notes to 1972 Proposed Rules; *see also Bryan v. Whitfield*, No. 3:14-cv-341/MCR/EMT, 2015 WL 4429337, at *3 (N.D. Fla. July 18, 2015) (same). Plaintiffs' evidence of damages poses a significant risk of eliciting an emotional response from the jury. Class members testified about experiencing panic when they first saw water entering their homes, *see, e.g.*, Ex. A, Cindy Kersey Dep. 22:3–11, and about fearing that they and their loved ones would die as the water levels rose, *see, e.g.*, Ex. J, Richard Tarbox Tr. 154:19–155:1; Ex. H, Richard Bullard Dep. 6:13–25; Ex. G, David Pavlock Dep. 39:4–8. They testified about trying to move their pets and prized possessions to safety as soon as possible. *See, e.g.*, Ex. D, Beverly Bullard Dep. 96:1–7; Ex. E, Jacob Hutchins Dep. 51:4–9; Ex. S, Jacob Hutchins Tr. 111:8–17. And they testified about instructing their children to do the same by placing their clothes and favorite toys in clothes hampers. Ex. C, Amber Hutchins Dep. 79:1–8. A photograph of people standing in floodwater, with a small child's feet in the foreground, is on Plaintiffs' exhibit list. Ex. F, Exhibit 10 to Jeanne Henderly Dep. at 10. Class members also testified about repeated 911 calls and dramatic rescues. *See, e.g.*, Ex. H, Richard Bullard Dep. 34:25–35:15; Ex. I,

Exhibit 8 to Linda Navelski Dep. at 6 (photograph of rescue boat on Plaintiffs' exhibit list).

Several class members described physical injuries that they and their family members sustained during the flood, including scrapes, gashes, and hypothermia. *See, e.g.*, Ex. K, John Navelski Dep. 73:14–25; Ex. L, Richard Tarbox Dep. 56:11–59:3. Other testimony focused on the emotional toll that the flood took on class members. *See, e.g.*, Ex. J, Richard Tarbox Tr. 154:19–155:1; Ex. A, Cindy Kersey Dep. 32:19–21 ("Q: Were you at all injured during the flood? Did you receive any sort of injuries?"; "A: No. Mental.").

None of this evidence is admissible during the class trial because any scant probative value it might have is vastly outweighed by the likelihood that the jurors exposed to this type of evidence will reach a verdict based on their emotional reactions and their sympathies for Plaintiffs rather than on the evidence of whether IP is legally responsible for all of the flooding. This emotionally charged, sympathy-inducing evidence is exactly the type of material that Rule 403 was intended to exclude. And although IP anticipates that Plaintiffs will attempt to introduce evidence of class members' emotional distress to explain why some class members have imperfect recollections of the flood, the prejudicial impact of that evidence far outweighs the probative value, unless the details that the class members cannot remember are relevant to the issues to be decided in the class trial,

unless there are specific challenges to the class members' credibility, and unless there is not a less prejudicial means to inform the jury that the class members may have imperfect recollections. Evidentiary questions such as these—if they arise—are best resolved within the context of trial.

Moreover, the introduction of evidence of damages at the class trial—where the issues pertain exclusively to IP's conduct and the cause of the flooding—poses an unacceptable danger of confusing the issues and misleading the jury that substantially outweighs any probative value of this evidence. And time spent giving limiting instructions about the purposes for which the evidence could be considered not only would unduly delay the proceedings but would also be wholly ineffective at eliminating the prejudicial taint of this emotionally laden evidence. The only way to ensure a fair trial is to exclude all evidence of class members' damages from the class trial.

## **CONCLUSION**

The Court should exclude all evidence of damages from the class trial—including, but not limited to, testimony about emotional distress, testimony about physical injury, and testimony about displacement and damage to real and personal property, as well as photographs of children in flooded homes, photographs of rescue boats, and photographs of damaged items—because it is irrelevant and

because any probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, and undue delay.

| | |
|---|---|
| Dated: January 19, 2018 | Respectfully submitted, |
| | */s/ Daniel W. Nelson* |
| Larry Hill | Daniel W. Nelson |
| Florida Bar No. 173908 | District of Columbia Bar No. 433415 |
| MOORE, HILL & WESTMORELAND, P.A. | GIBSON, DUNN & CRUTCHER LLP |
| 350 West Cedar Street | 1050 Connecticut Avenue, N.W. |
| Pensacola, FL 32502 | Washington, D.C. 20036 |
| Telephone: (850) 434-3541 | Telephone: (202) 887-3687 |
| Fax: (850) 435-7899 | Fax: (202) 530-9571 |
| lhill@mhw-law.com | dnelson@gibsondunn.com |
| | |
| *Counsel for Defendant* | *Counsel for Defendant* |

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(B)

I hereby certify that counsel for Defendant conferred with counsel for Plaintiffs, and Plaintiffs oppose the relief sought in this motion.

*/s/ Daniel W. Nelson*
Daniel W. Nelson

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

I hereby certify that this memorandum contains 3,085 words and therefore complies with the word limit set forth in Local Rule 7.1(F).

*/s/ Daniel W. Nelson*
Daniel W. Nelson

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of January, 2018, the foregoing document was filed using the Court's CM/ECF system. In addition, (1) the filing is available for viewing and downloading via the CM/ECF system, and (2) the CM/ECF system will send notification of this filing to all attorneys of record who have registered for CM/ECF updates.

*/s/ Daniel W. Nelson*
Daniel W. Nelson