# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

| | |
|---|---|
| JOHN NAVELSKI, LINDA NAVELSKI, ERICK ALEXANDER, JACOB HUTCHINS, AMBER HUTCHINS, JEANNE HENDERLY, RICHARD BULLARD, and BEVERLY BULLARD, on their own behalf and those others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>INTERNATIONAL PAPER COMPANY,<br><br>    Defendant. | Case No. 3:14-cv-00445 MCR/CJK |

## DEFENDANT INTERNATIONAL PAPER COMPANY'S MOTION IN LIMINE TO LIMIT EXPERT TESTIMONY BY DR. DAVID CARRIER AND INCORPORATED MEMORANDUM OF LAW

Defendant International Paper Company ("IP") respectfully moves in limine for an order precluding Dr. David Carrier from testifying about a "wall of water" or any other hydrology issue. In support of this motion, IP submits the following memorandum of law.

**TABLE OF CONTENTS**

Page

INTRODUCTION ..................................................................................................1

ARGUMENT .......................................................................................................2

    I.    IP Anticipates That Plaintiffs Will Seek To Introduce Testimony From Dr. Carrier Concerning A "Wall Of Water" Released By The Kingsfield Road Dam ..................................................................................2

    II.   Any Probative Value Of Dr. Carrier's Testimony Concerning A "Wall Of Water" Released By The Kingsfield Road Dam Is Substantially Outweighed By The Risk Of Unfair Prejudice And Misleading The Jury ...........................................................................................4

CONCLUSION ....................................................................................................8

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allison v. McGhan Medical Corp.*,
    184 F.3d 1300 (11th Cir. 1999) ............................................................................5

*Eberli v. Cirrus Design Corp.*,
    615 F. Supp. 2d 1357 (S.D. Fla. 2009) ..................................................................5

*Hendrix v. Evenflo Co.*,
    255 F.R.D. 568 (N.D. Fla. 2009) .........................................................................5, 6

*Hull v. Merck & Co.*,
    758 F.2d 1474 (11th Cir. 1995) ..............................................................................6

*United States v. Frazier*,
    387 F.3d 1244 (11th Cir. 2004) ..........................................................................4, 7

**Rules**

Fed. R. Evid. 403 ...........................................................................................................4

**INTRODUCTION**

During an unprecedented 2014 rainstorm, a structure on IP's paper mill site in Cantonment, Florida, sometimes referred to as the "Kingsfield Road Dam," breached. The Court certified an issues class to determine whether—as Plaintiffs allege—the breach of the Kingsfield Road Dam caused all of the flooding of the class area.

At trial, Plaintiffs intend to offer expert testimony from Dr. Mark Ross and Dr. David Carrier. Dr. Ross, a hydrologist, will likely testify as to whether the breach of the dam caused all of the flooding of the class area. Dr. Carrier, a geotechnical engineer, will likely testify as to (1) whether, given his assumption that the dam was abandoned before the breach, the dam was abandoned properly, and (2) the cause of the breach of the Kingsfield Road Dam.

IP anticipates that Plaintiffs will also attempt to introduce testimony from Dr. Carrier that the breach of the dam released a "wall of water," and potentially on other issues relating to the alleged downstream effects from water released when the Kingsfield Road Dam breached. The Court should exclude testimony from Dr. Carrier that the breach of the dam released a "wall of water"—as well as any other testimony from Dr. Carrier on hydrology issues—because it is outside the scope of the opinions set out in Dr. Carrier's written report and any slight probative value it

1

might have is substantially outweighed by the risk of unfair prejudice and misleading the jury.

## ARGUMENT

I. **IP Anticipates That Plaintiffs Will Seek To Introduce Testimony From Dr. Carrier Concerning A "Wall Of Water" Released By The Kingsfield Road Dam.**

Dr. Carrier submitted a report in this case entitled, "Geotechnical Analysis of the Breach of the International Paper Dam, April 29–30, 2014." Ex. A, Carrier Report 1. Dr. Carrier's report plainly states: "In my opinion, there are two main geotechnical issues: Was the IP dam abandoned properly? And was the breach caused by overtopping or piping." *Id.*

Dr. Carrier's analysis is confined to these "two main geotechnical issues." *See* Ex. A, Carrier Report 1. He first addresses whether, given his assumption that the dam was abandoned, it was abandoned properly. *Id.* at 2–3. He then turns to whether the breach of the dam was caused by internal piping or overtopping. *Id.* at 3–4. And Dr. Carrier expresses opinions on these two issues, stating: "I have concluded that: 1. The IP dam was not abandoned properly. . . . [and] 2. The breach (failure) was caused by overtopping and consequent erosion." *Id.* at 1–2 (emphasis removed).

Notwithstanding his two stated geotechnical objectives and conclusions, Dr. Carrier's report contains an assertion that the breach "sen[t] a wall of water

2

downstream into Elevenmile Creek." Ex. A, Carrier Report 3. This offhand remark—for which Dr. Carrier provides no support—concerns an issue of hydrology that is entirely separate from the "two main geotechnical issues" addressed in the report. Similarly, in the final paragraph of the report, after stating his two geotechnical opinions, Dr. Carrier again refers in passing to a "wall of water": "Thus, in my opinion, the IP dam was not abandoned properly; and the April 2014 failure was caused by overtopping and rapid erosion. Consequently, when it breached, a wall of water was sent rushing downstream." *Id.* at 4.

When asked about these two references to a "wall of water" during his deposition, Dr. Carrier stated that he was "imagining . . . a surge prior to the breach," adding, "I think if you were standing downstream when it breached, you would consider it a wall of water." Exhibit B, Carrier Dep. 113:2–14. When pressed, Dr. Carrier admitted that he did not know if anyone had actually seen the Kingsfield Road Dam breach—his statements were based on a friend's experience observing a different dam breach while standing on top of it. *Id.* at 113:18–25. Dr. Carrier said that his friend "barely escaped with his life" and that the dam his friend was standing on released less water "than what escaped from [the] IP dam." *Id.* at 114:1–8. Dr. Carrier offered no support for his claim that he knew how much water was released when the Kingsfield Road Dam breached. *See id.*

IP anticipates that at trial, Plaintiffs will attempt to introduce similar testimony by Dr. Carrier concerning a "wall of water" released by the Kingsfield Road Dam and the alleged downstream effects of the breach.  The Court should preclude that type of testimony by Dr. Carrier for the reasons stated below.

II. **Any Probative Value Of Dr. Carrier's Testimony Concerning A "Wall Of Water" Released By The Kingsfield Road Dam Is Substantially Outweighed By The Risk Of Unfair Prejudice And Misleading The Jury.**

The potential for unfair prejudice or misleading the jury from Dr. Carrier's offhand remarks that the breach of the Kingsfield Road Dam released a "wall of water" substantially outweighs any slight probative value of those remarks.  To avoid unfair prejudice and misleading the jury, the Court should preclude Dr. Carrier from testifying about a "wall of water" or any other hydrology issues.

Federal Rule of Evidence 403 authorizes courts to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  In applying Rule 403 to expert testimony, courts take special care "to weigh the value of such evidence against its potential to mislead or confuse [the jury]"—cognizant of the fact that "expert testimony may be assigned talismanic significance in the eyes of lay jurors."  *United States v. Frazier*, 387 F.3d 1244, 1263 (11th Cir. 2004).

4

Courts consistently exclude expert testimony where the potential for unfair prejudice or misleading the jury substantially outweighs the probative value of the testimony. *See, e.g.*, *Hendrix v. Evenflo Co.*, 255 F.R.D. 568, 584 (N.D. Fla. 2009) (excluding an engineer's "inconsistent and factually unsupported" testimony based on unfair prejudice to the other party); *Eberli v. Cirrus Design Corp.*, 615 F. Supp. 2d 1357, 1368 (S.D. Fla. 2009) (excluding expert testimony as unfairly prejudicial despite the testimony's "slightly probative" value); *see also Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1310 (11th Cir. 1999) (citing Rule 403 as an additional ground for excluding expert testimony and noting that "stricter standards are necessary because of the potential impact on the jury of expert testimony").

Because Dr. Carrier is testifying as an expert, there is a significant risk that the jury will place undue weight on his assertions about a "wall of water," even though the assertions are entirely unfounded and Dr. Carrier, in his own words, confined his expert analysis to "two main geotechnical issues." *See* Ex. A, Carrier Report 1. This risk is heightened by the fact that Plaintiffs will likely argue at trial that the Kingsfield Road Dam released a "wall of water." *See* ECF No. 38 ¶ 42 (alleging that the breach of the dam released a "wall of water"). There is a significant danger that the jury will interpret Dr. Carrier's offhand remarks as support for Plaintiffs' allegation.

Dr. Carrier's statements about a "wall of water" also warrant exclusion because they are based entirely on the observations of a friend about a different dam structure. Dr. Carrier provides no other support for his comments about a "wall of water." This type of speculative and "potentially confusing testimony is at odds with the purposes of expert testimony" and should be excluded. *Hull v. Merck & Co.*, 758 F.2d 1474, 1477 (11th Cir. 1995); *see also Hendrix*, 255 F.R.D. at 579 ("Exclusion under Rule 403 is appropriate if the probative value of otherwise admissible expert testimony is substantially outweighed by its potential to confuse or mislead the jury.").

The risk of unfair prejudice and misleading the jury is further compounded by the fact that hydrology issues are outside the scope of Dr. Carrier's competence as a geotechnical engineer. A branch of civil engineering, geotechnical engineering is "a science that deals with the application of geology to engineering." *Geotechnical Engineering*, *Merriam-Webster Online Dictionary* (last visited Jan. 13, 2018), https://www.merriam-webster.com/dictionary/geotechnical%20engineering. In contrast, hydrology is "a science dealing with the properties, distribution, and circulation of water on and below the earth's surface and in the atmosphere." *Hydrology*, *Merriam-Webster Online Dictionary* (last visited Jan. 13, 2018), https://www.merriamwebster.com/dictionary/hydrology.

Dr. Carrier is a licensed geotechnical engineer who holds degrees in civil engineering. Ex. C, Carrier Report 1–2; *see also* Ex. B, Carrier Dep. 105:22–106:1; 122:19–21. According to his resume, Dr. Carrier has overseen the "design . . . and preparation of construction specifications for numerous industrial structures" and has supervised "the disposal of mineral waste materials." Ex. C, Carrier Report 2. Nothing in Dr. Carrier's training or experience—including his professional affiliations and publications—suggests an expertise in hydrology. Nor does Dr. Carrier hold himself out as a hydrologist: by his own description, his expertise is in geotechnical engineering. *Id.* at 1–2; *see also* Ex. B, Carrier Dep. 4:11–16.

Despite his lack of training or experience in hydrology, Dr. Carrier repeatedly made assertions about the manner in which water was released by the breach of the dam—a central question in the class trial, but one that is outside the scope of geotechnical engineering. Ex. A, Carrier Report 3–4; Ex. B, Carrier Dep. 113:2–114:8. Testimony by a witness labeled an "expert" can have a "powerful and potentially misleading effect" on a jury. *Frazier*, 387 F.3d at 1263. "A scientist, however well credentialed he may be, is not permitted to be the mouthpiece of a scientist in a different specialty." *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 614 (7th Cir. 2002). The Court should therefore preclude Dr. Carrier from testifying that the breach of the Kingsfield Road Dam

released a "wall of water" into Elevenmile Creek or about other alleged downstream effects of the breach, because any slight probative value of this testimony is vastly outweighed by the significant risk of unfair prejudice and misleading the jury.

## CONCLUSION

The Court should exclude Dr. Carrier's testimony that the breach of the Kingsfield Road Dam released a "wall of water"—as well as any other testimony from Dr. Carrier about hydrology issues, such as how much water was released as a result of the breach, the velocity of the water when it was released or as it traveled down Elevenmile Creek, the form the water took when it was released, the effects of released water downstream from the Kingsfield Road Dam, and the extent or cause of the flooding within the class area—because any slight probative value of this evidence is substantially outweighed by the risk of unfair prejudice and misleading the jury.

Dated:  January 19, 2018              Respectfully submitted,

                                      /s/ Daniel W. Nelson
Larry Hill                            Daniel W. Nelson
Florida Bar No. 173908                District of Columbia Bar No. 433415
MOORE, HILL & WESTMORELAND, P.A.      GIBSON, DUNN & CRUTCHER LLP
350 West Cedar Street                 1050 Connecticut Avenue, N.W.
Pensacola, FL 32502                   Washington, D.C. 20036
Telephone: (850) 434-3541             Telephone: (202) 887-3687
Fax: (850) 435-7899                   Fax: (202) 530-9571
lhill@mhw-law.com                     dnelson@gibsondunn.com

8

*Counsel for Defendant*  *Counsel for Defendant*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(B)

I hereby certify that counsel for Defendant conferred with counsel for Plaintiffs, and Plaintiffs oppose the relief sought in this motion.

*/s/ Daniel W. Nelson*
Daniel W. Nelson

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

I hereby certify that this memorandum contains 2,004 words and therefore complies with the word limit set forth in Local Rule 7.1(F).

*/s/ Daniel W. Nelson*
Daniel W. Nelson

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of January, 2018, the foregoing document was filed using the Court's CM/ECF system. In addition, (1) the filing is available for viewing and downloading via the CM/ECF system, and (2) the CM/ECF system will send notification of this filing to all attorneys of record who have registered for CM/ECF updates.

*/s/ Daniel W. Nelson*
Daniel W. Nelson