# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

| | |
|---|---|
| JOHN NAVELSKI, LINDA NAVELSKI, ERICK ALEXANDER, JACOB HUTCHINS, AMBER HUTCHINS, JEANNE HENDERLY, RICHARD BULLARD, and BEVERLY BULLARD, on their own behalf and those others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>INTERNATIONAL PAPER COMPANY,<br><br>    Defendant. | Case No. 3:14-cv-00445 MCR/CJK |

## DEFENDANT INTERNATIONAL PAPER COMPANY'S TRIAL BRIEF

Pursuant to Section IV.B of the Court's Order Setting Trial and Pretrial Schedule, ECF No. 119, Defendant International Paper Company ("IP") submits the following trial brief on all disputed issues of law.

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................1

ARGUMENT ..........................................................................................................2

    I.    On The Trespass Claim, Plaintiffs Must Prove That IP Intended For The Kingsfield Road Dam To Breach And For The Impounded Water To Enter Each Class Member's Property....................2

    II.    On The Strict-Liability Claim, Plaintiffs Must Prove That The Impoundment Of Water By The Kingsfield Road Dam Presented An Abnormal Risk Of Harm Impossible To Mitigate Through Reasonable Care And Was Not A Matter Of Common Usage ........................................................................................................4

    III.    On The Nuisance Claim, Plaintiffs Must Prove That Any Flooding Attributable To The Kingsfield Road Dam Was Prolonged Or Recurring .................................................................................7

    IV.    On The Negligence Claim, Plaintiffs Must Prove That IP Failed To Exercise Reasonable Care In Its Maintenance Of The Kingsfield Road Dam ...................................................................................9

    V.    On All Claims, Plaintiffs Must Prove But-For Causation ......................10

CONCLUSION .....................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Baltodano v. CTL Distribution, Inc.*,
   820 So. 2d 421 (Fla. 3d DCA 2002) ................................................................... 6

*Bartsch v. Costello*,
   170 So. 3d 83 (Fla. 4th DCA 2015) ..................................................................... 9

*Borneisen v. Capital One Fin. Corp.*,
   No. 8:09-CV-02539-T-17, 2011 WL 2730972 (M.D. Fla. July 13,
   2011) ................................................................................................................. 2, 3

*Burnett v. Rushton*,
   52 So. 2d 645 (Fla. 1951) ..................................................................................... 7

*Cities Serv. Co. v. State*,
   312 So. 2d 799 (Fla. 2d DCA 1975) ................................................................. 4, 5

*Clark v. Ashland, Inc.*,
   No. 2:13-cv-794-FtM-29MRM, 2017 WL 468213 (M.D. Fla. Feb.
   3, 2017) ................................................................................................................. 2

*Clay Elec. Co–Op., Inc. v. Johnson*,
   873 So. 2d 1182 (Fla. 2003) ................................................................................. 9

*Coddington v. Staab*,
   716 So. 2d 850 (Fla. 4th DCA 1998) ................................................................... 3

*Domen Holding Co. v. Aranovich*,
   802 N.E.2d 135 (N.Y. 2003) ................................................................................ 8

*Durrance v. Sanders*,
   329 So. 2d 26 (Fla. 1st DCA 1976) ................................................................... 11

*Fortier v. Flambeau Plastics Co.*,
   476 N.W.2d 593 (Wis. Ct. App. 1991) ............................................................... 3

*Great Lakes Dredging & Dock Co. v. Sea Gull Operating Corp.*,
   460 So. 2d 510 (Fla. 3d DCA 1984) ................................................................. 5, 6

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Jacobini v. JP Morgan Chase, N.A.*,
  No. 6:11-cv-231-Orl-31GJK, 2012 WL 252437 (M.D. Fla. Jan. 26, 2012) ...................................................................................................3, 4

*Lever Bros. Co. v. Langdoc*,
  655 N.E.2d 577 (Ind. Ct. App. 1995) ..................................................................3

*Peoples Gas Sys. v. Posen Constr., Inc.*,
  No. 2:11-cv-231-FTM-29, 2011 WL 5525346 (M.D. Fla. Nov. 14, 2011) ..........................................................................................................5

*Peoples Gas Sys. v. Posen Constr., Inc.*,
  No. 2:11-cv-231-FTM-29, 2012 WL 2358161 (M.D. Fla. June 20, 2012) ..........................................................................................................6

*Pitts Sales, Inc. v. King World Prods., Inc.*,
  383 F. Supp. 2d 1354 (S.D. Fla. 2005) ................................................................2

*Roberta L. Marcus, Inc. v. New Cingular Wireless PCS, LLC*,
  No. 12-20744-Civ, 2013 WL 12093810 (S.D. Fla. Apr. 29, 2013) .....................2

*Rockwell Int'l Corp. v. Wilhite*,
  143 S.W.3d 604 (Ky. Ct. App. 2003) ..................................................................3

*Sardell v. Malanio*,
  202 So. 2d 746 (Fla. 1967) ................................................................................10

*Shamhart v. Morrison Cafeteria Co.*,
  32 So. 2d 727 (Fla. 1947) ....................................................................................7

*St. Cyr v. Flying J Inc.*,
  No. 3:06-cv-13-J-33TEM, 2006 WL 2175662 (M.D. Fla. July 31, 2006) ..........................................................................................................6

*Uniroyal, Inc. v. Hood*,
  588 F.2d 454 (5th Cir. 1979) ...............................................................................8

*United States v. Stevens*,
  994 So. 2d 1062 (Fla. 2008) ..............................................................................11

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Winselmann v. Reynolds*,
   690 So. 2d 1325 (Fla. 3d DCA 1997) ................................................................. 2

## Other Authorities

*Florida Standard Jury Instructions in Civil Cases*, Instr. 401.12 ............................. 9

*Florida Standard Jury Instructions in Civil Cases*, Instr. 401.12(a) ....................... 11

*Florida Standard Jury Instructions in Civil Cases*, Instr. 401.4 ........................ 9, 10

*Florida Standard Jury Instructions in Civil Cases*, Instr. 403.12(a) ....................... 11

*Florida Standard Jury Instructions in Civil Cases*, Instr. 407.5 .............................. 11

## Treatises

75 Am. Jur. 2d Trespass § 21 (2011) ........................................................................ 3

55 Fla. Jur. 2d Trespass § 1 (2011) .......................................................................... 3

Restatement (Second) of Torts § 520 (1977) ........................................................... 6

Restatement (Second) of Torts § 821D (1979) ..................................................... 7, 8

Restatement (Second) of Torts § 821F ..................................................................... 8

Restatement (Third) of Torts § 20 (2010) ................................................................ 6

## INTRODUCTION

Plaintiffs are seeking to hold IP legally responsible for flooding that was allegedly caused by the breach, during an historic 2014 rainstorm, of a structure sometimes referred to as the "Kingsfield Road Dam" located on IP's paper mill site in Cantonment, Florida. Plaintiffs allege claims of trespass, strict liability, nuisance, and negligence.[1] The parties disagree about several aspects of Plaintiffs' burden of proof on these claims. This Trial Brief sets forth IP's position on those disputed issues of law.

Plaintiffs must prove the following elements at trial (among others): (1) On their trespass claim, Plaintiffs must prove that IP *intended* for the Kingsfield Road Dam to breach and *intended* for the impounded water to enter each class member's property; (2) on their strict-liability claim, Plaintiffs must prove that the impoundment of surface water by the Kingsfield Road Dam was an ultrahazardous activity that presented an abnormal risk of harm that was impossible to mitigate through reasonable care and was not a matter of common usage; (3) on their nuisance claim, Plaintiffs must prove that the Kingsfield Road Dam caused the class area to flood on multiple occasions or for a prolonged period; (4) on their

---

[1] On the late afternoon of January 22, 2018—the due date for this Trial Brief—Plaintiffs' counsel sent an e-mail to Defendant's counsel stating that they have decided not to pursue their trespass and nuisance claims. As of now, Plaintiffs have not filed a document formally dismissing those claims. To the extent those claims are formally dismissed in the future, the discussions of Plaintiffs' trespass and nuisance claims in this Trial Brief will become moot.

1

negligence claim, Plaintiffs must prove that IP failed to exercise reasonable care in its maintenance of the Kingsfield Road Dam; and (5) on all claims, Plaintiffs must prove but-for causation.

As the trial will show—and as IP will demonstrate when it moves for judgment as a matter of law at the close of Plaintiffs' case—IP is entitled to judgment on all of Plaintiffs' claims because there is no evidence supporting any of these elements of Plaintiffs' claims.

## ARGUMENT

**I.     On The Trespass Claim, Plaintiffs Must Prove That IP Intended For The Kingsfield Road Dam To Breach And For The Impounded Water To Enter Each Class Member's Property.**

Under Florida law, a "'civil trespass to real property is an injury to or use of the land of another by one having no right or authority.'" *Clark v. Ashland, Inc.*, No. 2:13-cv-794-FtM-29MRM, 2017 WL 468213, at *8 (M.D. Fla. Feb. 3, 2017) (quoting *Winselmann v. Reynolds*, 690 So. 2d 1325, 1327 (Fla. 3d DCA 1997)). To establish a claim of trespass to real property, plaintiffs must show:  (1) "an *intentional* entry upon, injury to or use of their land by one having no right or authority"; (2) "possession of the land at the time of the trespass"; (3) "a lack of consent for the interference with the property"; and (4) "actual harm." *Borneisen v. Capital One Fin. Corp.*, No. 8:09-CV-02539-T-17, 2011 WL 2730972, at *6 (M.D. Fla. July 13, 2011) (emphasis added) (citing *Pitts Sales, Inc. v. King World*

2

*Prods., Inc.*, 383 F. Supp. 2d 1354, 1357 (S.D. Fla. 2005)); *see also Roberta L. Marcus, Inc. v. New Cingular Wireless PCS, LLC*, No. 12-20744-Civ, 2013 WL 12093810, at *4 (S.D. Fla. Apr. 29, 2013) (defining the related tort of trespass to personal property as "'the *intentional* use of, or interference with, a chattel which is in the possession of another, without justification'" (emphasis added) (quoting *Coddington v. Staab*, 716 So. 2d 850, 851 (Fla. 4th DCA 1998))).

Trespass to property is therefore "an intentional tort" under Florida law. *Jacobini v. JP Morgan Chase, N.A.*, No. 6:11-cv-231-Orl-31GJK, 2012 WL 252437, at *3 (M.D. Fla. Jan. 26, 2012) (citing 75 Am. Jur. 2d Trespass § 21 (2011) and 55 Fla. Jur. 2d Trespass § 1 (2011)). "'[T]he requisite intention is to enter upon the particular land in question, irrespective of whether the actor knows or should know that he or she is not entitled to enter.'" *Id.* (quoting 75 Am. Jur. 2d Trespass § 21 (2011) and citing 55 Fla. Jur. 2d Trespass § 1 (2011)).

In fact, unlike other states, Florida does not even recognize a cause of action for negligent trespass. *Compare Borneisen*, 2011 WL 2730972, at *6, *with Rockwell Int'l Corp. v. Wilhite*, 143 S.W.3d 604, 619 (Ky. Ct. App. 2003) (recognizing cause of action for "negligent trespass" under Kentucky law), *Lever Bros. Co. v. Langdoc*, 655 N.E.2d 577, 582 (Ind. Ct. App. 1995) (Indiana law), *and Fortier v. Flambeau Plastics Co.*, 476 N.W.2d 593, 608 (Wis. Ct. App. 1991)

3

(Wisconsin law).  Intentional entry is therefore an indispensable element of any trespass claim under Florida law.

Accordingly, in this case, Plaintiffs will be required to prove that IP intended for the Kingsfield Road Dam to breach and intended for the impounded water to enter each class member's property.  Proof that IP merely intended to build the Kingsfield Road Dam is not sufficient to satisfy Plaintiffs' burden of proof on their trespass claim because Florida law requires an "'intention . . . to enter upon the particular land in question.'"  *Jacobini*, 2012 WL 252437, at *3.  As the trial will confirm, Plaintiffs' trespass claim fails as a matter of law because Plaintiffs can identify no evidence—and, indeed, do not even allege—that IP intended for the Kingsfield Road Dam to breach and for the impounded water to enter each class member's property.

**II.     On The Strict-Liability Claim, Plaintiffs Must Prove That The Impoundment Of Water By The Kingsfield Road Dam Presented An Abnormal Risk Of Harm Impossible To Mitigate Through Reasonable Care And Was Not A Matter Of Common Usage.**

Although Florida courts have adopted the doctrine of strict liability for ultrahazardous activities, they have applied the doctrine only in limited circumstances, where the activity is so uniquely dangerous that the risk of harm cannot be mitigated through reasonable care and the activity is not suited to the land in question.  *See Cities Serv. Co. v. State*, 312 So. 2d 799, 802 (Fla. 2d DCA 1975).

Under Florida law, "[a]n activity is ultrahazardous if it (a) necessarily involves a risk of serious harm to the person, land or chattels of others which cannot be eliminated by the exercise of the utmost care, and (b) is not a matter of common usage." *Cities Serv. Co.*, 312 So. 2d at 802 (internal quotation marks omitted). Florida courts consider six factors in determining whether an activity meets these criteria for being deemed ultrahazardous:

> (a) Whether the activity involves a high degree of risk of some harm to the person, land or chattels of others;
> (b) Whether the harm which may result from it is likely to be great;
> (c) Whether the risk cannot be eliminated by the exercise of reasonable care;
> (d) Whether the activity is not a matter of common usage;
> (e) Whether the activity is inappropriate to the place where it is carried on; and
> (f) The value of the activity to the community.

*Id.*; *see also Peoples Gas Sys. v. Posen Constr., Inc.*, No. 2:11-cv-231-FTM-29, 2011 WL 5525346, at *3 (M.D. Fla. Nov. 14, 2011) (enumerating factors). The first three factors evaluate the degree of risk and the possibility of mitigating the risk posed by the activity, and the next three evaluate whether the activity was being undertaken in an appropriate location.

The three factors regarding the degree of risk typically receive the most attention from Florida courts. Because the imposition of liability without fault is particularly draconian, Florida courts require that the danger to persons or property created by an ultrahazardous activity be both "of a certain magnitude and nature"

5

and "abnormal." *Great Lakes Dredging & Dock Co. v. Sea Gull Operating Corp.*, 460 So. 2d 510, 513 (Fla. 3d DCA 1984) (internal quotation marks omitted). "'The essential question is whether the risk created is so unusual, either because of its magnitude or because of the circumstances surrounding it, as to justify the imposition of strict liability.'" *Peoples Gas Sys. v. Posen Constr., Inc.*, No. 2:11-cv-231-FTM-29, 2012 WL 2358161, at *2 (M.D. Fla. June 20, 2012) (quoting Restatement (Second) of Torts § 520 cmt. f (1977)); *see also* Restatement (Third) of Torts § 20 cmt. h (2010) ("Most ordinary activities can be made generally safe when all actors take reasonable precautions.").

Applying these criteria, Florida courts have recognized blasting as a quintessential ultrahazardous activity because it creates an "abnormal risk." *Great Lakes Dredging & Dock Co.*, 460 So. 2d at 513. But where the danger is not abnormal and "can easily be eliminated by the exercise of reasonable care," Florida law does not impose strict liability. *See St. Cyr v. Flying J Inc.*, No. 3:06-cv-13-J-33TEM, 2006 WL 2175662, at **1–2, 4 (M.D. Fla. July 31, 2006) (holding that refilling a propane tank in a "defective manner," causing "an explosion and flash-fire," was not ultrahazardous under Florida law because "the danger involved in the sale of propane can easily be eliminated by the exercise of reasonable care"). For example, the Third District Court of Appeal held that, although "the 'drum off' unloading of sulfuric acid from a tanker through a hose and nozzle under pressure"

6

is a "dangerous enterprise," it is not an ultrahazardous activity because "the danger attendant to that activity can be eliminated" through reasonable care. *Baltodano v. CTL Distribution, Inc.*, 820 So. 2d 421, 421–22 (Fla. 3d DCA 2002).

The trial will make clear that Plaintiffs' strict-liability claim fails as a matter of law because there is no evidence that the impounding of water by the Kingsfield Road Dam created an abnormal risk of harm to persons or property that was incapable of being mitigated through reasonable care or involved an uncommon use of land inappropriate to the place it was carried out.

### III. On The Nuisance Claim, Plaintiffs Must Prove That Any Flooding Attributable To The Kingsfield Road Dam Was Prolonged Or Recurring.

A private nuisance is "a nontrespassory invasion of another's interest in the private use and enjoyment of land."  Restatement (Second) of Torts § 821D (1979). The alleged invasion here was water that, according to Plaintiffs, entered the class area as a result of the breach of the Kingsfield Road Dam.

Under Florida law, a nuisance requires a continuity of action over a substantial period of time.  To establish liability, the invasion of another's interest in the private use and enjoyment of land must be either prolonged or recurring. *See, e.g.*, *Burnett v. Rushton*, 52 So. 2d 645, 645 (Fla. 1951) (describing a nuisance by a neighbor who "had *over a long period of time*, at various times of day and night, operated her radio in a loud tone" (emphasis added)); *Shamhart v. Morrison*

7

*Cafeteria Co.*, 32 So. 2d 727, 728 (Fla. 1947) (concluding that, under Florida law, a cafeteria that "*constantly* make[s] use of the public sidewalk as a waiting room to the special injury of [a neighboring drugstore]" is a nuisance (emphasis added)).

The requirement in Florida law that a nuisance be either prolonged or recurring is consistent with the law of other jurisdictions. For example, the pre-split Fifth Circuit held that, under Georgia law, an isolated incident cannot constitute a nuisance. *See, e.g.*, *Uniroyal, Inc. v. Hood*, 588 F.2d 454, 462–63 (5th Cir. 1979) (explaining that "[t]he whole idea of nuisance is that of either a continuous or regularly repetitious act or condition which causes the hurt, inconvenience or injury" (internal quotation marks omitted)). Jurisdictions outside this circuit have recognized the same requirement. *See, e.g.*, *Domen Holding Co. v. Aranovich*, 802 N.E.2d 135, 139 (N.Y. 2003) ("[N]ot every annoyance will constitute a nuisance. Nuisance imports a continuous invasion of rights—a pattern of continuity or recurrence of objectionable conduct." (citation and internal quotation marks omitted)).

The Restatement is in agreement. It explains that "significant harm" is required to establish liability for nuisance, and that "continuance or recurrence of the interference is often necessary to make the harm significant." Restatement (Second) of Torts § 821F cmt. g. Thus, in the context of a flood, the Restatement

8

explains that "the flooding of the plaintiff's land" is "a nuisance [only] if it is repeated or of long duration." *Id.* § 821D cmt. e.

The trial will demonstrate that Plaintiffs' nuisance claim fails as a matter of law because the April 29–30 flood was an isolated event that lasted a matter of hours and thus any flooding of the class area attributable to the breach of the Kingsfield Road Dam was neither prolonged nor recurring.

**IV.   On The Negligence Claim, Plaintiffs Must Prove That IP Failed To Exercise Reasonable Care In Its Maintenance Of The Kingsfield Road Dam.**

A negligence claim has four elements under Florida law: "(1) a duty by defendant to conform to a certain standard of conduct; (2) a breach by defendant of that duty; (3) a causal connection between the breach and injury to plaintiff; and (4) loss or damage to plaintiff." *Bartsch v. Costello*, 170 So. 3d 83, 86 (Fla. 4th DCA 2015) (citing *Clay Elec. Co–Op., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003)).

Although duty and breach are elements of a negligence claim, those terms are not used when instructing a jury on negligence. Courts instead instruct jurors to decide whether the defendant "fail[ed] to use reasonable care," *Florida Standard Jury Instructions in Civil Cases*, Instr. 401.4, and whether that failure was "a legal cause of [the] loss[,] injury[,] or damage" at issue, *id.* Instr. 401.12 (brackets omitted). That inquiry subsumes the question whether the defendant breached a

9

duty to the plaintiff.  *See* Note 5 to Instr. 401.4 (recommending that "no instruction be given on" the "duty to keep lookout" and the "duty to inspect vehicle or to maintain vehicle in safe condition" because "[n]egligence is properly and completely defined as the failure to use that degree of care which a reasonable person would use under like circumstances").

Thus, while Plaintiffs are free to argue that IP owed them certain duties, they can only prove their negligence claim by convincing the jury that those supposed duties reflect "the care that a reasonably careful person would use" in its maintenance of the Kingsfield Road Dam and that the failure to use that care was the legal cause of all of the flooding in the class area.  *Florida Standard Jury Instructions in Civil Cases*, Instr. 401.4; *see also* ECF No. 105 at 11–12.  To the extent Plaintiffs have identified purported duties in the pre-trial stipulation that are not recognized under Florida law, IP reserves the right to move for judgment as a matter of law on Plaintiffs' negligence claim or to request curative or final instructions informing the jury that IP did not have one or more of the duties alleged by Plaintiffs.

## V. On All Claims, Plaintiffs Must Prove But-For Causation.

For each of Plaintiffs' claims, Florida law requires that the relevant act, omission, or occurrence be the "but for" cause of the alleged damage.  The Florida Supreme Court has long recognized that but-for causation is an essential element

10

of a negligence claim. *See Sardell v. Malanio*, 202 So. 2d 746, 747 (Fla. 1967) ("[T]o constitute proximate cause, there must be such a [n]atural, direct[,] and [c]ontinuous sequence between the negligent act and the injury that it can reasonably be said but for the act the injury would not have occurred." (citation omitted)); *see also United States v. Stevens*, 994 So. 2d 1062, 1065–66 (Fla. 2008) (stating that "legal cause" is synonymous with "proximate cause" (internal quotation marks omitted)). This well-settled principle is incorporated into the Florida Standard Jury Instructions, which require a plaintiff pursuing a negligence claim to prove that the defendant's failure to exercise reasonable care was a legal cause of the plaintiff's damage, and define a "legal cause" as one that "directly and in natural and continuous sequence produces or contributes substantially to producing [the] damage, so that it can reasonably be said that, *but for* the negligence, the damage would not have occurred." *Florida Standard Jury Instructions in Civil Cases*, Instr. 401.12(a) (emphasis added).

This requirement—that the relevant act, omission, or occurrence be the but-for cause of the alleged damage—applies with equal force to other torts under Florida law, including strict-liability claims, *see Florida Standard Jury Instructions in Civil Cases*, Instr. 403.12(a) (products liability), intentional-tort claims, *see id.* Instr. 407.5 (false imprisonment), and nuisance claims, *see, e.g.*, *Durrance v. Sanders*, 329 So. 2d 26, 29 (Fla. 1st DCA 1976) ("[A] plaintiff in a

11

nuisance action must demonstrate that the maintenance of the nuisance was the natural and proximate cause of the injury."). Plaintiffs therefore must prove but-for causation as an essential element of all four of their claims.

In fact, the Court has already applied the but-for causation standard to this case. As the Court recognized in a prior order, "[O]n this record, the liability jury only need determine whether or not *all* of the flooding experienced by Plaintiffs was caused by the failure of the Kingsfield Road Dam. If the evidence presented at the liability trial leads the jury to conclude that the Dam failure did not cause any of the flooding in the subject neighborhoods, or that it caused some but not all of the flooding, then Plaintiffs will have failed to carry their burden and the matter will end." ECF No. 105 at 11–12. Accordingly, on Plaintiffs' negligence claim, they will be required to prove that IP's alleged failure to exercise reasonable care was the but-for cause of all of the flooding of the class area, and on Plaintiffs' three other claims, they will be required to prove that the breach of the Kingsfield Road Dam was the but-for cause of all of the flooding of the class area.[2]

---

[2] Because the causation question in the class trial is "whether or not *all* of the flooding experienced by Plaintiffs was caused by the failure of the Kingsfield Road Dam," ECF No. 105 at 11, it is appropriate to modify the standard legal-cause instruction to ask whether the breach of Kingsfield Road Dam—or, on Plaintiffs' negligence claim, Defendant's alleged failure to exercise reasonable care—was *the* legal cause, rather than *a* legal cause, of all of the flooding of the class area. As this Court explained, if there was more than one cause of the flooding, then "Plaintiffs will have failed to carry their burden and the matter will end." *Id.* at 12.

The trial will make clear that Plaintiffs' negligence, trespass, strict-liability, and nuisance claims fail as a matter of law because there is no evidence that IP's alleged failure to exercise reasonable care caused all of the flooding of the class area, nor is there evidence that the breach of the Kingsfield Road Dam caused all of the flooding of the class area.

## CONCLUSION

Plaintiffs' trespass, strict-liability, nuisance, and negligence claims fail as a matter of law.

Dated:  January 22, 2018                                          Respectfully submitted,

|  |  |
|---|---|
| Larry Hill<br>Florida Bar No. 173908<br>MOORE, HILL & WESTMORELAND, P.A.<br>350 West Cedar Street<br>Pensacola, FL 32502<br>Telephone: (850) 434-3541<br>Fax: (850) 435-7899<br>lhill@mhw-law.com<br><br>*Counsel for Defendant* | */s/ Daniel W. Nelson*<br>Daniel W. Nelson<br>District of Columbia Bar No. 433415<br>Jason R. Meltzer, *pro hac vice*<br>District of Columbia Bar No.1010315<br>GIBSON, DUNN & CRUTCHER LLP<br>1050 Connecticut Avenue, N.W.<br>Washington, D.C. 20036<br>Telephone: (202) 887-3687<br>Fax: (202) 530-9571<br>dnelson@gibsondunn.com<br>jmeltzer@gibsondunn.com<br><br>*Counsel for Defendant* |

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

I hereby certify that this memorandum contains 3,988 words and therefore complies with the word limit set forth in Local Rule 7.1(F).

*/s/ Daniel W. Nelson*
Daniel W. Nelson

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of January, 2018, the foregoing document was filed using the Court's CM/ECF system.  In addition, (1) the filing is available for viewing and downloading via the CM/ECF system, and (2) the CM/ECF system will send notification of this filing to all attorneys of record who have registered for CM/ECF updates.

*/s/ Daniel W. Nelson*
Daniel W. Nelson