## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

JOHN NAVELSKI, LINDA NAVELSKI,
ERICK ALEXANDER, JACOB HUTCHINS,
AMBER HUTCHINS, JEANNE HENDERLY,
RICHARD BULLARD, and BEVERLY
BULLARD, on their own behalf and those
others similarly situated,

      Plaintiffs,

v.                          CASE NO. 3-14-cv-445 MCR/CJK

INTERNATIONAL PAPER COMPANY,

      Defendant.

## PLAINTIFFS' TRIAL MEMORANDUM

Pursuant to the Court's Pretrial Order, Plaintiffs hereby submit their trial memorandum setting forth citation of authorities and arguments in support of their positions on all disputed issues of law.

### I.    Issue One: Plaintiffs' Burden of Proof on the Negligence Claim

International Paper acknowledges that it owns and is responsible for the Kingsfield Road Dam (the "dam"). A landowner carrying out operations on his or her land that result in flooding the land of another may be liable for the injury done thereby if the landowner performs the operation negligently. 56 Fla. Jur 2d Water § 96; *see also Maule Industries, Inc. v. Messana*, 62 So. 2d 737 (Fla. 1953) (a

landowner my bring a negligence action against an adjoining landowner to recover damages for the flooding of the plaintiff's land); *Bunyak v. Clyde J. Yancey & Sons Dairy, Inc.,* 438 So.2d 891 (Fla. DCA 2d 1983) (noting "liability has frequently been imposed upon landowners for damages caused to neighboring property by water" and finding error when jury was not permitted to consider strict liability claim), citing *Dye v. Burdick,* 262 Ark. 124, 553 S.W.2d 833 (1977); *Atkinson v. Herington Cattle Co.,* 200 Kan. 298, 436 P.2d 816 (1968); *Tinsley v. Monson & Sons Cattle Co.,* 2 Wash.App. 675, 472 P.2d 546 (1970); *see also Florida East Coast Ry. Co. v. United States*, 519 F.2d 1184, 1198-99 (5th Cir. 1975) (upholding finding of responsibility for flood when rainfall was not a sole proximate cause of the event).

This Court has already recognized in this litigation that, in Florida, negligence requires proof of four elements: (1) duty of care; (2) breach; (3) legal or proximate causation; and (4) actual damages. Order of March 25, 2017 (ECF No. 93), at 54, n.31, citing *Wallace v. Dean,* 3 So. 3d 1035, 1047 (Fla. 2009); *Williams v. Davis,* 974 So.2d 1052, 1056 (Fla. 2007). Liability for damages may be imposed if a dam owner fails to exercise ordinary care in the maintenance and operation of the dam to avoid injury to others. 78 Am. Jur. 2d Waters § 267, citing *Inland Power & Light Co. v. Grieger*, 91 F.2d 811 (9th Cir. 1937); *Taylor v. Indiana &*

*Michigan Elec. Co.*, 184 Mich. 578, 151 N.W. 739 (1915); *Letterman v. English Mica Co.*, 249 N.C. 769, 107 S.E.2d 753 (1959).

Plaintiffs will therefore ask the Court to find, as a matter of law, that IP's duties of care to Plaintiffs included not only the general duty to avoid foreseeable harm to the Plaintiffs, but, *inter alia,* the duties to maintain and operate the dam to ensure its safety. *Id.; see also* 93 C.J.S. Waters § 320 (dam owner "has the duty to maintain the dam in a state of proper repair.") This duty included the obligation to remove the dam after it was no longer needed.

In addition to those cases cited above regarding a landowner's duty of care to neighbor landowners, the source of these duties can be found in the Restatement (Second) of Torts, which provides that *a possessor of land is subject to liability to others outside of the land for physical harm caused by a structure or other artificial condition on the land, which the possessor realizes or should realize will involve an unreasonable risk of such harm,* if "(a) *the possessor has created the condition …"* Restatement (Second) of Torts § 364 (1965) (emphasis added). The Supreme Court of Florida recognized this section of the Restatement as a "firmly established principle" in *Whitt v. Silverman,* 788 So.2d 210, 219 (Fla. 2001). It is therefore well settled that IP, as the owner of and party responsible for the existence, maintenance, and operation of the dam, had these specific duties of care to Plaintiffs.

II.    **Issue Two: Duties Imposed by the Northwest Florida Water Management District and IP's Failure to Obtain Permit is Negligence *Per Se***

Florida law provides that the Northwest Florida Water Management District (the "District") (along with other water management districts) oversees permitting, and that there are two volumes of a Handbook of rules applicable to general permits. F.A.C. § 62-330.010. The law specifically requires permitting for any activity that involves: any project over wetlands or over surface waters; or any project capable of impounding more than 40 acre-feet of water; or any dam that is taller than 10 feet, measured from the lowest elevation of the downstream toe to the dam crest. F.A.C. § 62-330.020(a), (e), (f).

Obtaining a permit is a formal process that involves, *inter alia*: form submission providing at least 30 days' notice of the proposed activity; requests for any exemption; and review by the District. The District, in turn, has numerous specific criteria for general permits, including erosion and sediment controls; maintenance requirements; inspections; and voluminous maintenance phase requirements. In addition, the District's Design and Performance Standards include requirements regarding dam design, inspections to ensure proper operation and maintenance; and additional performance requirements as to rate control, volume

control, floodplain analysis studies, storage and conveyance, low flow maintenance, and base flow maintenance.[1] [2]

In Florida, "[t]he duty imposed pursuant to a statute is absolute, and proof of disregard of a duty created by statute for the protection of a special class establishes, it has been said, negligence as a matter of law." *Woodalls, Inc. v. Varn*, 106 So.2d 634, 636–37 (Fla.App. 1958) citing *Schmidt v. Merchants Despatch Transp. Co.,* 270 N.Y. 287, 200 N.E. 824, 829 (1936). Here, the District's permitting process considers the impact of the activity on public safety. District Handbook I, sections 10.2.3(a), 10.2.3.1. The usual standard of care is superseded by the standard enacted by statute. *Woodalls*, 106 So.2d at 636–37. It is not a matter of consequence whether in such case the liability arising from breach of a statutory duty be regarded as a liability created by statute or a liability for negligence for which the statute creates a new standard or norm. *Id.* Failure to observe the statute creates liability per se. *Id.*

---

[1] "Department of Environmental Protection and Northwest Florida Water Management District Environmental Resource Permit Applicant's Handbook - Volume II (Design and Performance Standards Including Basin Design and Criteria)," including all appendices, is incorporated by reference herein [October 1, 2013] and available at: (http://www.flrules.org/Gateway/reference.asp?No=Ref-03172 and http://www.flrules.org/Gateway/reference.asp?No=Ref-03173) or from the Agency as provided in subsection (5).

[2] The references to the Handbook were added on October 1, 2013, but the regulation at all relevant times gave implementing responsibility to the Districts. *See* Fla. Admin. Code r. 62-330.010

Plaintiffs ask the Court to find as a matter of law that these permitting regulations apply to IP and the dam. There is no question of fact that the dam was a project over wetlands or over surface waters; was capable of impounding more than 40 acre-feet of water; and was a dam taller than 10 feet. It was therefore required to be properly permitted and subject to the District requirements of such permitting.  IP's failure to obtain the required safety permit for the activity of having the dam is negligence *per se.*

### III.   Issue Three: Role of Court and Jury in Determining the Strict Liability Claim

Whether IP's ownership of and use of the dam constitutes an abnormally dangerous activity is a question of law for the Court. *See* 6 Fla. Prac., Personal Injury & Wrongful Death Actions § 6:6 (2017-2018 ed.), citing Restatement (Second) Torts § 520, comment 1. *See also Cities Service Co. v. State,* 312 So.2d 799, 803 (Fla. DCA 2nd 1975) (stating that, "[o]rdinarily, determination of whether or not a particular structure or method of operation is natural or non-natural is one which would require the *trial court's* evaluation of all of the pertinent factors at a trial," but deciding issue on summary judgment).

In turn, whether this abnormally dangerous activity caused Plaintiffs' damages is a question of fact for the jury. The standard for causation is whether Defendant's ownership and use of the dam was a substantial factor in causing

Plaintiffs' injuries. *Old Island Fumigation, Inc.,* 604 So.2d 1246 (Fla. DCA 3d 1992).

**IV.   Issue Four: Factors for the Court's Consideration on the Strict Liability Claim**

Florida courts recognize the general principle that, "[o]ne who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity although he has exercised the utmost care to prevent the harm." *Bunyak,* 438 So.2d at 894, citing Restatement (Second) of Torts. § 519. Whether an activity was abnormally dangerous requires the Court to consider the following factors:

> (a) Whether the activity involves a high degree of risk of some harm to the person, land or chattels of others;
> (b) Whether the harm which may result from it is likely to be great;
> (c) Whether the risk cannot be eliminated by the exercise of reasonable care;
> (d) Whether the activity is not a matter of common usage;
> (e) Whether the activity is inappropriate to the place where it is carried on; and
> (f) The value of the activity to the community.

*Cities Service Co. v. State,* 312 So.2d 799, 802 (Fla. DCA 2nd 1975), citing Restatement of Torts § 520. Importantly, none of these factors is individually dispositive, and it "is not necessary that all of the factors set forth above be present in a particular case." 65 C.J.S. Negligence § 177 (2017); *see also Bunyak, supra,* 438 So.2d at 894 (finding some factors weighing against application of doctrine

but nonetheless finding jury should have been permitted to consider strict liability theory); *Cities, supra,* 312 So.2d at 803 (same; noting first four factors weighed in favor of defendant but last two favored plaintiff, and finding impoundment to be both ultrahazardous and abnormally dangerous"). "Ordinarily the presence of more than one factor, but not all of them, will be necessary to declare the activity ultrahazardous as a matter of law so as to hold the actor strictly liable." 65 C.J.S. Negligence § 177 (2017).

In *Cities,* the Florida appellate court affirmed the circuit court's finding that a mine operator was strictly liable for damage caused by escape of phosphatic waters after a dam maintained by defendant broke. 312 So.2d at 803. The court was persuaded by the fact that the phosphatic slime impounded by the dam "had a high potential for damage to the environment" and that, "[i]f a break occurred, it was to be expected that extensive damage would be visited upon property many miles away." *Id.* The court's conclusion is consistent with other case law recognizing that maintaining a dam in a populated area may constitute an abnormally dangerous activity. In *Greenberg Investment P'ship L.P. v. Cary's Lake Homeowners Assoc.,*No. 3:14-cv-05096, 2016 WL 2766675 (D.S.C. May 13, 2016), the strict liability claim survived dismissal when the plaintiff alleged that a dam was abnormally dangerous because the damage to Plaintiff's business "was foreseeably and directly and proximately caused by the breakage of [Defendant]'s

abnormally dangerous manmade dams, as [the dams] were improperly constructed, maintained, monitored, operated and/or otherwise managed in an unreasonable manner." *Id.* Similarly, in *Clark-Aiken Co. v. Cromwell-Wright Co., Inc*., 367 Mass. 70 (1975), plaintiff sought to recover for damage caused when water allegedly stored behind a dam on the defendant's property was released and flowed onto its property. The Massachusetts court recognized that the doctrine "distinguishes cases where large quantities of water are stored 'in dangerous location in a city' from those in which 'water is collected in a rural area, with no particularly valuable property near,' imposing strict liability in the former but not the latter case."

The comments to the Restatement section adopted by the Florida courts are also instructive. They provide that factors (a) and (b) are to be considered together with respect to whether an activity is abnormally dangerous. "The harm threatened must be major in degree, and sufficiently serious in its possible consequences to justify holding the defendant strictly responsible for subjecting others to an unusual risk. If the potential harm is sufficiently great, however, the likelihood that it will take place may be comparatively slight and yet the activity be regarded as abnormally dangerous." *See* Restatement (Second) of Torts § 520 (1977), comment g.  Under factor (c), there is probably no activity from which all risks of harm could not be eliminated by taking all conceivable precautions, but it is not

necessary, for this factor to apply, that the risk be one that no conceivable precautions or care could eliminate. *Id.,* comment h. Liability for abnormally dangerous activities is not, however, a matter of these three factors alone and the other factors in (d), (e) and (f) must also be taken into account. *Id.*

As to factor (d), an "activity is a matter of common usage if it is customarily carried on by the great mass of mankind or by many people in the community. . .Water collected in large quantity in a hillside reservoir in the midst of a city or in coal mining country is not the activity of any considerable portion of the population, and may therefore be regarded as abnormally dangerous; while water in a cistern or in household pipes or in a barnyard tank supplying cattle, although it may involve much the same danger of escape, differing only in degree if at all, still is a matter of common usage and therefore not abnormal." Restatement (Second) of Torts § 520 (1977), comment I, cited by *Peoples Gas Sys. V. Posen Constr., Inc.*, No. 2:11-cv-231-FTM-29, 2012 WL 2358161, at *3 (M.D. Fla. June 20, 2012). Factor (e) is somewhat tied to the value to the community in factor (f). Applying factor (e), if these activities are of sufficient value to the community in factor (f), they may not be regarded as abnormally dangerous when they are so located, since the only place where the activity can be carried on must necessarily be regarded as an appropriate one. *Id*, comment j. An example may be coal mining that must be done where there is coal, but it has sufficient value to the community

not to be abnormally dangerous. *Id.* Finally, factor (f) is present where the community is largely devoted to the dangerous enterprise and its prosperity largely depends upon it. *Id*, comment k.

The Restatement Second of Torts, section 520 comment j *specifically recognizes the inherent risk of impounding water in a heavily populated area*: "[T]he collection of large quantities of water in irrigation ditches or in a reservoir in open country usually is not a matter of any abnormal danger. On the other hand, if the reservoir is constructed in a coal mining area that is honeycombed with mine passages, or on a bluff overhanging a large city or if water is collected in an enormous standing tank above the same city, there is abnormal danger and strict liability when, without any negligence, the water escapes and does harm." Restatement (Second) of Torts § 520 (1977), comment j. Accordingly, as demonstrated in *Cities* and the other decisions discussed above, courts nationwide have recognized that collecting water in unsuitable or dangerous places is a typical abnormally dangerous activity under the Restatement (Second) of Torts §§ 519 and 520 (1977). *See also Smith v. Chippewa County Road Comm'rs*, 5 Mich.App. 370, 146 N.W.2d 702 (1966) (whether defendant was absolutely liable for creation of artificial reservoir that caused flooding was jury question).

Here, IP impounded water in large quantities that consisted of runoff from their wastewater treatment facility. The wastewater is pollution. There was a

significant risk of harm from the dam breaking that could result in the flooding of many residents downstream. The risk of having the dam may have been eliminated by exercising due care, but that would have required either removing the dam entirely or building a completely different dam that was legally permitted as safe. Building unpermitted dams is an abnormally dangerous activity as a matter of law. Impounding water in mass quantities is not a matter of common usage, and there are very few other similar dams in the surrounding community. The activity was not appropriate for its location because no legal approval for the impoundment was sought from the District. Finally, the dam was not used to benefit the community and had no public value. All six factors weigh in favor of finding that the dam was an abnormally hazardous activity. Plaintiffs will therefore ask the Court to find, at the close of evidence, that IP's maintenance of and responsibility for the dam constituted an abnormally dangerous activity.

Dated: January 22, 2018

Respectfully Submitted,

/s/ James L. Kauffman
James L. Kauffman, Fl. Bar No. 12915
Jonathan R. Marshall, *Pro Hac Vice*
**BAILEY & GLASSER LLP**
1054 31st Street, N.W., Suite 230
Washington, DC 20007
Telephone: (202) 463-2101
Fax: (202) 463-2103
jkauffman@baileyglasser.com
jmarshall@baileyglasser.com

Jeremiah J. Talbott
**Law Office of J.J. Talbott, P.A.**
900 East Moreno Street
Pensacola, FL 32503
jj@talbottlawfirm.com

Christopher M. Vlachos
**Vlachos Injury Law, P.A.**
244 East Intendencia Street
Pensacola, FL 32502
chris@vlachosinjurylaw.com

*Counsel for Plaintiffs and the Class*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY this 22nd day of January 2018 that a true copy of the foregoing was served via electronic delivery on counsel below:

Daniel W. Nelson
Jason Meltzer
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 887-3687
Fax: (202) 530-9571

Charles F. Beall, Jr.
cbeall@mhw-law.com
Florida Bar No. 66494

Larry Hill
lhill@mhw-law.com
ljohnson@mhw-law.com
Florida Bar No. 173908

Kimberly S. Sullivan
ksullivan@mhw-law.com
Florida Bar No. 101408
MOORE, HILL & WESTMORELAND, P.A.
220 West Garden Street
SunTrust Tower, 9th Floor
Pensacola FL 32502
Telephone: (850) 434-3541

*Attorneys for Defendant*

Patrick Clerkin
Aaron S. Imhoff
Clerkin, Sinclair & Mahfouz, LLP
530 B Street, 8th Floor
San Diego, CA 92101
Telephone: (619) 308-6550
Fax: (619) 923-3143

Attorneys for *USAA and USAA GIC*

                                            */s/ James L. Kauffman*
                                            James L. Kauffman

14