**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

JOHN NAVELSKI, LINDA NAVELSKI, ERICK ALEXANDER, JACOB HUTCHINS, AMBER HUTCHINS, JEANNE HENDERLY, RICHARD BULLARD, and BEVERLY BULLARD, on their own behalf and those others similarly situated,

 Plaintiffs,

v.            Case No. 3:14-cv-445 MCR/CJK

INTERNATIONAL PAPER COMPANY,

 Defendant.

**PLAINTIFFS' OPPOSITION TO DEFENDANT INTERNATIONAL PAPER COMPANY'S MOTION IN LIMINE TO EXCLUDE EVIDENCE REGARDING THE COMPOSITION OF PAPER MILL EFFLUENT AND MATERIALS USED IN EFFLUENT TREATMENT**

## **TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................. 1

II. ARGUMENT ......................................................................................................... 1

    A. The effluent evidence is relevant to Plaintiffs' strict liability claim.... 1

    B. The wastewater evidence is relevant under Rule 401. ........................ 6

    C. The wastewater evidence satisfies the Rule 403 balancing test. ......... 7

    D. The effluent evidence is not being offered as evidence of character prohibited by Rule 404(b). ................................................................. 8

III. CONCLUSION ..................................................................................................... 9

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Coleman v. Home Depot, Inc.*,
   306 F.3d 1333 (3d Cir. 2002) ............................................................................. 7

*Goldsmith v. Bagby Elevator Co., Inc.*,
   513 F.3d 1261 (11th Cir. 2008) ......................................................................... 9

*Peoples Gas Sys. v. Posen Const., Inc.*,
   No. 2:11-cv-231, 2011 WL 5525346 (M.D. Fla. Nov. 14, 2011) ...................... 5

*United States v. Barron-Soto*,
   820 F.3d 409 (11th Cir. 2016) ........................................................................... 8

*United States v. Bradberry*,
   466 F.3d 1249 (11th Cir. 2006) ......................................................................... 8

*United States v. Dominguez*,
   661 F.3d 1051 (11th Cir. 2011) ......................................................................... 9

*United States v. Krenzelok*,
   874 F.2d 480 (7th Cir. 1989) ............................................................................. 7

*United States v. Sanders*,
   668 F.3d 1298 (11th Cir. 2012) ......................................................................... 9

*United States v Troya*,
   733 F.3d 1125 (11th Cir. 2013) ......................................................................... 9

**Rules**

Fed. R. Evid. 401 .................................................................................................. 1, 6

Fed. R. Evid. 403 ............................................................................................... 1, 7, 8

Fed. R. Evid. 404(b) .......................................................................................... 1, 8, 9

## I.  INTRODUCTION

Plaintiffs respond in opposition to the motion in limine of Defendant International Paper ("IP") to exclude evidence regarding the chemical constituents of its wastewater effluent. The effluent evidence is relevant to the elements of Plaintiffs' strict liability claim, is of immense probative value as to those elements, and poses scant risk of unfair prejudice or confusion. The evidence therefore satisfies the strictures of Rule 401 and 403, and, because it is not improper character evidence excludible pursuant to Rule 404(b), the Court may exercise its discretion in favor of admitting it. IP's motion should therefore be denied.

## II.  ARGUMENT

### A.  The effluent evidence is relevant to Plaintiffs' strict liability claim.

Plaintiffs intend to show at trial that IP's wastewater ponds and treatment facilities reached full capacity in the storm and overflowed. The resulting wastewater runoff collected behind the dam. Of course, IP tries to draw a line between "clean" stormwater and its wastewater effluent, but in a rainfall where millions of gallons of chemical wastewater mixes with stormwater, such distinction is irrelevant. There can be no serious dispute regarding that point, notwithstanding IP's unabashed assertion of "no indication that any non-stormwater effluent overflowed from the ponds." Motion at 4 (ECF No. 156 at 8).

In fact, IP's internal communications reveal that the plant's wastewater treatment system reached full capacity, after which wastewater effluent overflowed

and discharged to Elevenmile Creek and was impounded behind the dam before it broke. *See* Plaintiffs' Trial Exhibit 173 (copy attached as Exhibit A, filed under seal). The Court will recall that Kyle Moore, the mill's environmental health and safety manager, confirmed the overflow:

| | | |
|---|---|---|
| [COUNSEL]: | | Is it a true statement that the ponds filled up during the storm event? |
| MOORE: | | Yes. |
| Q. | | Is it also a true statement that the ponds overflowed? |
| A. | | We filled up the ponds, the basins. We did have overflow in pond 3 and pond 4 during that storm event. |
| Q. | | Is it also a true statement that those overflows would have eventually made their way into Elevenmile Creek and up to the Kingsfield Road dam? |
| A. | | Yes, that is correct. |

Transcript of May 31, 2016 Evidentiary Hearing at 31-32 (excerpted copy attached as Exhibit B).

The discharged wastewater contained chemicals, chemical compounds, and other substances, including without limitation phosphorus, fecal coliform, chromium, selenium, silver, ammonia, mercury, arsenic, and dioxin. *See* May 13, 2009 Florida DEP Consent Order, Table 1, ECF No. 156-11 (filed under seal as Exhibit K to IP's Motion) at 18-21. IP's Environmental Project Manager, John Taylor, described the wastewater's composition as follows:

[COUNSEL]:   Are there chemicals that are in there [the wastewater]?

2

| | |
|---|---|
| TAYLOR: | There's amounts of chemicals, yes. |
| Q. | Okay. What are those chemicals that are in there? |
| A. | The chemicals, there's a variety of potential chemicals at the mill. Predominately, we have some sulfuric acid, some sodium hydroxide, what is known as pulping liquor. Those would be the – the main constituents. |

Transcript of July 8, 2015 Deposition of John Taylor at 26 (excerpted copy attached as Exhibit C).

It was entirely foreseeable to IP that wastewater would collect behind its dam in the event of rainfall. *See* Operations Manual for Treatment of Mill Effluent, ECF No. 156-8 (filed under seal as Exhibit H to IP's Motion) (establishing mill operators' long history and experience constructing and maintaining water impoundments, at least since 1972); Exceedances Summary, ECF No. 156-9 (filed under seal as Exhibit I to IP's Motion) (documenting at least one dozen severe rainfall events, including hurricanes, occurring at mill over eleven-year period); Champion's Stormwater History, ECF No. 156-10 (filed under seal as Exhibit J to IP's Motion) (evidencing concerns over insufficient surge pond capacity and planning for 100-year rainfall event). IP's environmental health and safety manager, Kyle Moore, described that the mill has operated for many years:

| | |
|---|---|
| [COUNSEL]: | …So I'm showing you – this is a blowup of the mill site, it's marked as Exhibit 116. If you could, would you trace some of the – I'm going to break this into stormwater and wastewater – the wastewater features of the mill? |

3

| | |
|---|---|
| MOORE: | The wastewater system is really these basins through here. This is the first one. The mill will process the waters coming down through here and go through – this is – I might add, this picture is an older version. The system is a bit different now by the basic configuration is somewhat similar. |
| | It starts here, goes down through here, through this basin here. There's actually – in this are they call it primary clarification. That's the first phase of that wastewater system. And then the water, once it goes through this primary clarification, it flows down and goes through this basin here. |
| | And this is about a five-day retention kind of basin, and this is where what is referred to as secondary treatment takes place. And then at this point in time the flow actually turned and went back through a second basin here. As I said a moment ago, the configuration changes – we changed technology a little bit, so this is no longer the case. But at this particular point in time this all would have been the wastewater system. So basically the flow of water coming through these basins or ponds that are currently referred to in series, and the finally coming on down to some final aeration, treatment passage aeration, and the going into Elevenmile Creek. |

Transcript of May 31, 2016 Evidentiary Hearing at 13-14 (excerpted copy attached as Exhibit D).

The chemicals and substances in the wastewater, and the foreseeability risk that those chemicals might escape containment, are relevant for Plaintiffs' strict liability claim against IP, as set forth in Count IV of the First Amended Complaint (ECF No. 38). Under Florida law, a defendant may be held strictly liable in tort for

4

the harm it causes by conducting an ultrahazardous or abnormally dangerous activity. *See, e.g.*, *Peoples Gas Sys. v. Posen Const., Inc.*, No. 2:11-cv-231, 2011 WL 5525346, at *3 (M.D. Fla. Nov. 14, 2011). Whether an activity is abnormally dangerous requires a court to consider several factors:

    (a) existence of a high degree of risk of some harm to the person, land or chattels of others;
    (b) likelihood that the harm that results from it will be great;
    (c) inability to eliminate the risk by the exercise of reasonable care;
    (d) extent to which the activity is not a matter of common usage;
    (e) inappropriateness of the activity to the place where it is carried on; and
    (f) extent to which its value to the community is outweighed by its dangerous attributes.

*Id.* (citing Restatement (Second) of Torts § 520 (1977)).

Plaintiffs should be allowed to introduce evidence at trial of the that the dam did not impound "pure" stormwater but a mixture with wastewater in it to help establish the Restatement factors. Specifically, Plaintiffs aspire to show that the abnormally dangerous "activity" undertaken by IP was not merely continuing to maintain an unnecessary impoundment dam of dubious structural integrity, but one whose foreseeable failure would release wastewater runoff, under certain circumstances such as those that existed during this flood. The additive peril posed by the wastewater enhanced the risk of harm, increased its likely degree, and made IP's usage even more uncommon and inappropriate.

5

## B. The wastewater evidence is relevant under Rule 401.

IP contends that the evidence is not relevant as required by the federal rules, *i.e.*, that "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. IP complains that the effluent content has no bearing on dam maintenance issues or on the question of causation, but those are not the purposes for which the evidence is offered. The evidence is offered to support a finding that IP engaged in an abnormally dangerous activity for which it should be held strictly liable. IP's liability on Count IV is fundamental to the action, and, in aid of that purpose, the effluent wastewater evidence is right on point.

Additionally, the evidence that IP seeks to exclude is relevant completely apart from any NPDES permitting issues. The Operations Manual from IP's predecessor, St. Regis Company, shows an overview of the mill's operations and demonstrates that the mill created an earthen dam impoundment to collect wastewater runoff as early as 1972. *See* Exhibit H at 29537, 29540, Figure I. The Consent Order, Exhibit K, contains a similar history that explains that IP and its predecessors have impounded wastewater runoff behind the dam for years. The Exceedance Summary, Exhibit I, is cryptic about any exact amount of any permit exceedances, but clearly records repeated heavy rainfall events at the mill. *See* Exhibit I (references to 6.8" rainfall within 24 hours and 5" falling within a 3 hour

period, 8" within 24 hours in Hurricane Erin, 8" with Hurricane Opal and four consecutive days of 6" rains, 9.1" on a day in April, and 17" in 48 hours in Hurricane Georges.) These repeated heavy rainfall events are probative to show the foreseeability of heavy storms at the mill and the risk associated with increased flow towards the dam and Elevenmile creek. Similarly, Exhibit J contains a relevant reference to a report recommendation that IP's wastewater treatment system be able to withstand a 100-year storm, and a resultant effluent overflow.

      **C.**    **The wastewater evidence satisfies the Rule 403 balancing test.**

IP urges in the alternative that the effluent evidence be excluded regardless of its importance to the case, on the ground that the evidence's irrefutable probative value is nonetheless "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. But IP is incorrect, particularly in light of its burden to convince this Court that the potential prejudice attendant to Plaintiffs' evidence *substantially* outweigh its undeniably significant probative value. *See United States v. Krenzelok*, 874 F.2d 480, 482 (7th Cir. 1989) (instructing that "when the trial judge is in doubt, Rule 403 requires admission (this is the force of '*substantially* outweighed'") (emphasis in original)); *see also Coleman v. Home Depot, Inc.*, 306 F.3d 1333, 1344 (3d Cir. 2002) (quoting *Krenzelok*). Further, because the relevance of the evidence is straightforward, and it is not being offered for the improper purposes that IP supposes, there is no danger

7

that the jury will be misled or confused. Consequently, the better exercise of the Court's sound discretion, *see United States v. Bradberry*, 466 F.3d 1249, 1253 (11th Cir. 2006), would be to rule that Rule 403's balancing test weighs overwhelmingly in favor of admitting the effluent evidence.

### D. The effluent evidence is not being offered as evidence of character prohibited by Rule 404(b).

Finally, IP maintains that an incidental, specific portion of Plaintiffs' presentation — evidence that the mill has, on occasion, exceeded its permit discharge allowances — constitutes improper "bad acts" evidence. *See* Fed. R. Evid. 404(b) ("Evidence of a crime, wrong or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."). This argument is a non-starter, insofar as any documentation or testimony of permit exceedances that may be intertwined with or lend context to evidence primarily intended to demonstrate the constituency of the wastewater effluent will not be offered to show that IP exceeded its permit on a particular occasion.

The probative value of the effluent evidence lies not with how many technical violations Plaintiffs can prove, but merely that identifiable compounds or substances existed *at all* in the wastewater that collected behind the dam on the night of the flooding. *See, e.g.*, *United States v. Barron-Soto*, 820 F.3d 409, 417 (11th Cir. 2016) (evidence of prior drug trafficking conviction admissible to prove defendant's intent

8

to join trafficking conspiracy); *United States v Troya*, 733 F.3d 1125, 1132 (11th Cir. 2013) (evidence of shooting admissible to prove defendants' intent to possess firearms); *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1286 (11th Cir. 2008) (evidence of discrimination and retaliation against co-workers admissible to prove defendant employer's intent to discriminate and retaliate against plaintiff). Also, a proper limiting instruction will address any legitimate concern on the part of IP. *See United States v. Dominguez*, 661 F.3d 1051, 1072-73 (11th Cir. 2011) (approving use of Eleventh Circuit pattern jury instruction on Rule 404(b) evidence).

Rule 404(b) "is one of inclusion." *United States v. Sanders*, 668 F.3d 1298, 1314 (11th Cir. 2012). As such, the list of permissible alternatives provided in the Rule for the admission of evidence "'is not exhaustive and the range of relevancy outside the ban is almost infinite.'" *Id.* (quoting *United States v. Ellisor*, 522 F.3d 1255, 1267 (11th Cir. 2008)). Hence, evidence will not be excluded under Rule 404(b) unless it tends to prove *only* infirm character and actions in conformity therewith. *See id.* The case at bar patently does not present one of those rare occasions.

## III. CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court deny IP's motion and permit the introduction at trial of the anticipated evidence concerning the constituent components of the mill's wastewater effluent, insofar as

9

it is necessary to prove the substantive elements of the Count IV strict liability claim, and to demonstrate the foreseeability of the harm IP's activity.

## Local Rule 7.1(F) Certification

The undersigned counsel hereby certifies that this Response in Opposition is compliant with the limitations imposed by the Court and, according to Microsoft Word's "Word Count" function, pursuant to the methodology contained in Local Rule 7.1(F), this Response in Opposition is 2772 words, which includes headings, footnotes, and quotations.

Dated: January 26, 2018

Respectfully Submitted,

*/s/ James L. Kauffman*
James L. Kauffman, Fl. Bar No. 12915
Jonathan R. Marshall, *pro hac vice*
**BAILEY & GLASSER LLP**
1054 31st Street, N.W., Suite 230
Washington, DC 20007
Telephone: (202) 463-2101
jkauffman@baileyglasser.com
jmarshall@baileyglasser.com

Jeremiah J. Talbott
**Law Office of J.J. Talbott, P.A.**
900 East Moreno Street
Pensacola, FL 32503
jj@talbottlawfirm.com

Christopher M. Vlachos
**Vlachos Injury Law, P.A.**
244 East Intendencia Street
Pensacola, FL 32502
chris@vlachosinjurylaw.com
*Counsel for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 26th day of January, 2018, that a true copy of the foregoing pleading was served via electronic delivery on counsel below:

Daniel W. Nelson
D.C. Bar No. 433415
Gibson, Dunn & Crutcher LLP
1050 Connecticut Ave., N.W.
Washington, D.C. 20036
Telephone: 202-887-3687
dnelson@gibsondunn.com

Charles F. Beall, Jr.
cbeall@mhw-law.com
Florida Bar No. 66494

Larry Hill
lhill@mhw-law.com
ljohnson@mhw-law.com
Florida Bar No. 173908

Kimberly S. Sullivan
ksullivan@mhw-law.com
Florida Bar No. 101408
MOORE, HILL & WESTMORELAND, P.A.
220 West Garden Street
SunTrust Tower, 9th Floor
Pensacola FL 32502
Telephone: (850) 434-3541

Patrick Clerkin *Pro Hac Vice*
Texas Bar No. 24040702
Aaron S. Imhoff *Pro Hac Vice*
California Bar No. 310743
Clerkin Sinclair & Mahfouz, LLP
530 B Street, 8th Floor
San Diego, CA 92101
Telephone: 619-308-6550

*Attorneys for Defendant*

                                        */s/ James L. Kauffman*
                                        James L. Kauffman