# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

JOHN NAVELSKI, LINDA NAVELSKI, ERICK ALEXANDER, JACOB HUTCHINS, AMBER HUTCHINS, JEANNE HENDERLY, RICHARD BULLARD, and BEVERLY BULLARD, on their own behalf and those others similarly situated,

     Plaintiffs,

v.                                  Case No. 3:14-cv-445 MCR/CJK

INTERNATIONAL PAPER COMPANY,

     Defendant.


## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION IN *LIMINE* TO EXCLUDE EVIDENCE OF SUBSEQUENT REMEDIAL MEASURES

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION .......................................................... 1

II. DISCUSSION............................................................. 2

    A.    Legal Standards .................................................2

          1.    Federal Rule of Evidence 407: Subsequent Remedial
               Measures................................................... 2

          2.    Federal Rule of Evidence 403: Exclusion of Relevant
               Evidence ................................................... 3

    B.    Application of Law to Facts .................................3

          1.    Defendant's Arguments ................................... 3

          2.    Abandonment and Removal of the Kingsfield Road Dam........ 5

          3.    Other Remedial Measures ...................................13

          4.    Rule 403 Does Not Apply Here Due to Lack of Unfair
               Prejudice or Confusion ........................................14

III. CONCLUSION ..........................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Inland Prods., Inc. v. City of Columbus*,
    954 N.E.2d 141 (Ohio Court App. 2011) ..........................................................9

*Rust v. Hammons*,
    929 S.W.2d 834 (Mo. Ct. App. 1996) ..............................................................9

**Rules**

Fed. R. Evid. 403 .......................................................................1, 3, 4, 14

Fed. R. Evid. 407 ...........................................................................*passim*

## I.   INTRODUCTION

Plaintiffs John Navelski, *et al.* (collectively, "Plaintiffs") hereby file this Opposition ("Opposition") to Defendant's Motion in *Limine* to Exclude Evidence of Subsequent Remedial Measures ("Motion"). (*See* Docket No. 154.) This Court should deny the Defendant's Motion for, among others, the following reasons:

Plaintiffs acknowledge that, under Federal Rule of Evidence 407, evidence of subsequent remedial measures is sometimes inadmissible. *See* Fed. R. Evid. 407 ("Rule 407"). But this rule also contains a host of well-established exceptions, namely, that evidence of subsequent remedial measures "[m]ay be admitted for another purpose, such as impeachment or—if disputed—proving ownership, control, or feasibility of precautionary measures." *Id.* As explained below, the exceptions concerning "impeachment" and "feasibility of precautionary measures" clearly apply to the facts of this case, given Defendant's continued denial of some basic and important facts at issue here. Moreover, the evidence of subsequent remedial measures is neither "unfairly prejudicial" nor "confusing," and thus should not be excluded on Federal Rule of Evidence 403 grounds. *See* Fed. R. Evid. 403 ("Rule 403").

Accordingly, the Defendant's Motion should be denied in its entirety.

## II.  DISCUSSION

### A.  Legal Standards

#### 1.  Federal Rule of Evidence 407: Subsequent Remedial Measures

Under Rule 407, evidence of subsequent remedial measures is generally inadmissible. *See* Fed. R. Evid. 407. But there are clear and well-established exceptions to the general rule, as reflected in the emphasized text of Rule 407 set forth immediately below:

> **Rule 407. Subsequent Remedial Measures**
>
> When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove:
>
> - negligence;
>
> - culpable conduct;
>
> - a defect in a product or its design; or
>
> - a need for a warning or instruction.
>
> ***But the court may admit this evidence for another purpose, such as impeachment or—if disputed—proving ownership, control, or the feasibility of precautionary measures.***

Fed. R. Evid. 407 (emphasis added).

### 2. Federal Rule of Evidence 403: Exclusion of Relevant Evidence

Pursuant to Rule 403, even (arguably) relevant evidence should be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *See* Fed. R. Evid. 403. This rule reads in full as follows:

> **Rule 403. Excluding Relevant Evidence for Prejudice, Confusion, Waste of Time, or Other Reasons**
>
> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Fed. R. Evid. 403.

The application of these legal standards to the facts of this case follows immediately below.

### B. Application of Law to Facts

### 1. Defendant's Arguments

In its Motion (Docket No. 154), Defendant has advanced three core arguments, namely that:

1. The Court "should exclude all exhibits and testimony, including expert testimony, regarding the post-event remedial work performed by IP, including the removal of the Kingsfield Road Dam, because it is inadmissible under Federal Rule of Evidence 407," (*id.* at 1.);

2.      The Court should acknowledge, but not apply, any of the "exceptions" contained in Rule 407 itself, because "IP has never disputed its ownership or control of the Kingsfield Road Dam or contended that it was not feasible to remove the structure," (*id.* at 11); and

3.      The Court should exclude "[e]vidence of IP's post-storm remediation project . . . under Federal Rule of Evidence 403, because any minimal probative value is substantially outweighed by the unfair prejudice to IP and the jury confusion that would inevitably result from the admission of this evidence," (*id.* at 2).

In its papers, Defendant is reluctant to give details about the nature of its post-remediation work. At one point, Defendant writes, "IP removed the structure ***and took other remedial steps*** in the Elevenmile Creek drainage channel." (*Id.* at 1 (emphasis added).) Defendant, however, does not ***specify*** the actual "other remedial steps" that it took and thus wants eliminated from trial. Similarly, later in the brief, Defendant states that "[i]ts post-storm remediation efforts, including the removal of the Kingsfield Road Dam, are a quintessential example of subsequent remedial measures." (*Id.* at 3.) But again, Defendant does not describe what, if any, specific steps it took other than removing the Kingsfield Road Dam. (*Id.*) By failing to identify ***concretely*** what ***specific*** remedial steps Defendant is actually talking about, it is difficult for both Plaintiffs and the Court to discern what specific post-remedial measures are at issue and need resolution here. Nevertheless, Defendant's arguments

should be dispatched, for at least the reasons set out below, if not for additional reasons that are difficult to assess at this juncture of the pleadings. Accordingly, it is only fair to grant to Plaintiffs the right to raise additional arguments at the time of trial to allow for the admission of evidence of subsequent remedial measures that Defendant has yet to identify.

## 2. Abandonment and Removal of the Kingsfield Road Dam

The one concrete example of an alleged subsequent remedial measure offered by Defendant concerns its purported abandonment and removal of the Kingsfield Road Dam *after* the flood at issue in this case. But the truth is that the dam was abandoned by Defendant *before* the 2014 flood. (*See, e.g.*, Ex. A, Tr. of Evidentiary Hearing, Testimony of Kyle Joseph Moore ("Mr. Moore"), at 16, 19, 22 (conceding that that the dam post-2012 was not used for "wastewater," and further conceding that "[a]fter 2012, the flow . . . now goes into an effluent pipeline and goes down to a wetland treatment near Perdido Bay," but *denying* that the dam had no purpose whatsoever since it still had some alleged "stormwater" applications between 2012 and 2014).) Just so the record is clear, Defendant's denial via Mr. Moore— Defendant's Environmental Health and Safety Manager, (*id.* at 8)—is contained in the following passage from the evidentiary hearing:

> Q.     Would you agree with me that after the wastewater processes were changed [in 2012] that there really

> wasn't any purpose served by having this dam present?
>
> A.    I think probably there was no -- there was no real purpose with regard to the wastewater NPDES system, the wastewater system. ***I think probably it still did serve some sort of purpose in terms of conveying stormwater into Elevenmile Creek.***

(*Id.* at 22 (emphasis added).) It is therefore fair game for Plaintiffs to inquire, and adduce testimony, about whether it was Defendant's actions **either before or after the flood** that constituted the abandonment of the dam. This inquiry necessarily implicates a discussion and consideration of Defendant's conduct after the flood, thereby fitting into the exceptions set out in Rule 407. *See* Fed. R. Evid. 407.

Moreover, abandonment requires a permit, although Defendant has **denied**, or at least **equivocated about**, whether it had knowledge of this prior to 2014, and thus an examination of the Defendant's state of mind both **before and after** 2014 is necessarily in order for the jury to examine and determine this issue. The key passage involving Mr. Moore from the evidentiary hearing is the following:

> Q.    The last time that we had talked [at your deposition] we discussed a little bit about the regulatory requirements that would have pertained to the Kingsfield Road dam. Do you agree with me that there were regulatory requirements that applied to the Kingsfield Road dam?
>
> A.    Yes, it's my understanding — I found out about this ***after*** the storm event — that there are regulatory requirements that pertain to dams.

Q.     And specifically to this dam, correct?

A.     Yeah. I don't -- ***I do not recognize that as a dam, so I guess it wasn't my recognition that it was pertaining to that dam***. But, yes, I'm aware [now] that there are regulations that cover  dams.

Q.     When I asked at your deposition, I said did you know if there were any specific regulatory requirements that pertain to this dam, you answered yes. Are you changing your  testimony?

                        **\*\*\*\***

THE WITNESS: Yeah, I mean, I did not recognize that there were regulations — dam regulations pertaining to that structure at the time of this — before and up to that storm event.

Sometime after that, I was educated by one of our International Paper's attorneys that there are indeed regulations with regard to those types of structures.

**BY MR. MARSHALL:**

Q.     The Kingsfield Road dam type of  structure?

A.     Yes, the Kingsfield Road  structure.

Q.     Do you know if International Paper complied with those regulatory  requirement[s]?

A.     I never saw any documents or I never did any activities with regard to evaluating that structure  in regard to these regulations, no, ***so I do not know***.

(*Id.* at 25-27 (emphasis added).) Given the foregoing denials ("I do not recognize that as a dam") and equivocations ("I never saw any documents . . . [and] so I do not know") about the pre- and post-2014 regulatory requirements, Plaintiffs should certainly be entitled to inquire about these issues for both "impeachment" and "feasibility of precautionary measures" purposes under the exceptions to Rule 407. *See* Fed. R. Evid. 407.

Moreover, given that Defendant abandoned the dam prior to 2014, Defendant should have obtained a permit at the time of the abandonment. The permitting agency would necessarily, under applicable law, have required Defendant to remove the dam for safety, which Defendant could have done ***easily and inexpensively*** because the dam served no purpose at the time (even though, of course, the Defendant ***denies*** that the dam ***had no purpose whatsoever***, as reflected in the quotes above). The record also reflects that it would have cost no more than $600,000 to remove the dam completely, although Defendant ***has not as yet formally conceded*** that figure or dollar amount.

In light of these denials, the feasibility and cost of the removal of the dam are certainly at issue in this case. Given that these issues are disputed, and not conceded, it is fair for Plaintiffs to be allowed to put on evidence of Defendant's easy post-flood removal of the dam and the relatively minimal associated cost of such post-flood activity. This evidence clearly goes to both "impeachment" and the "feasibility

of [the] precautionary measure" under the exceptions set forth in Rule 407. *See* Fed. R. Evid. 407; *see, e.g.*, *Inland Prods., Inc. v. City of Columbus*, 954 N.E.2d 141, 158-59 (Ohio Court App. 2011) (holding, in ***flood*** case, that evidence of city's repair of broken sewer isolation gates following wet weather event was admissible in property owner's action to recover for damages sustained when water from city's sewer system backed up into and upon owner's property and buildings; evidence was not offered to demonstrate negligence, but to show the feasibility of precautionary measures the city could have taken prior to the flooding event); *Rust v. Hammons, et al.*, 929 S.W.2d 834, 837-38 (Mo. Ct. App. 1996) (holding, in ***flood-related*** litigation, that trial court did not abuse its discretion in admitting evidence that hotel had placed flood warning sign at parking garage after flood in action against hotel by car owner whose vehicle was damaged by flood while parked in garage; evidence of subsequent remedial measure was offered to rebut testimony by hotel's general manager that there were no structural changes made to garage, nor any relocation of entrance to garage after flood).

Other passages concerning subsequent remedial measures from the testimony of Mr. Moore are to similar effect. For instance, Mr. Moore has allowed for the fact that Defendant has been "working with" the U.S. Army Corps of Engineers and the Florida Department of Environmental Protection ("DEP") to "return this [dam area] to kind of a natural state that would allow the — allow really mother nature, if you

will, to convey this stormwater into Elevenmile Creek, just as it would have done, you know, 5,000 years ago before the facility existed here." (*Id.*, at 21.) This same point arose again later in the direct examination of Mr. Moore, as follows:

> Q. But you would agree with me that — now with the modification, you essentially recognize that you could have turned this into a natural channel without any issue?
>
> A. We did recognize that we could have turn that into a natural channel, yes.
>
> Q. Was one of the goals in turning this into a natural channel to minimize the risk of downstream flooding?
>
> A. I guess the recognition that we had was really around the fact that the purpose that we could probably — that this area had conveyed stormwater for a long, long time before the facility was here.
>
> The only reason this structure ever got here was really in the '60s when the mill first began to build a wastewater system and so part of this structure was related to that.
>
> And so I think it was a recognition that we just could do the same thing, that it would convey stormwater and probably would help facilitate flow of water, just like this structure had done, and so we'd do it in a more natural way that basically used mother nature to accomplish the same task.

(Ex. A, Moore Testimony, at 22-23.) ***The Defendant has, however, never conceded that it should or could have done so prior to 2012***, thus rendering the "feasibility of this precautionary measure[]" at issue in the case. *See* Fed. R. Evid. 407.

The same logic applies to the "impoundments" issue, and whether Defendant, prior to 2014, knew or should have known—because it was very easy to know—that there would be less impoundment (or build-up) or water with a "natural channel" as opposed to a dam. To wit:

> Q.	I'm going to show you an exhibit that's been marked as Plaintiff's Exhibit 83 and have you identify this document for the record. Can you see that?
>
> A.	Yes.
>
> **MR. HILL:** No objection.
>
> **THE COURT:** That will be admitted. Thank you. Plaintiffs' 83.
>
> **(Plaintiff's Exhibit 83 admitted into evidence.)**
>
> **BY MR. MARSHALL:**
>
> Q.	Can you identify this document, please.
>
> A.	Oh, I'm sorry. Yeah, it's a memorandum from W.K. Dixon to Tony Greco with Nutter & Associates ["Dixon/Nutter Mem."], and it's a recommendation by them for channel stabilization. It says — just to read the title, it says, "Recommended dam breach and channel stabilization alternative along Elevenmile Creek on International Paper property, Cantonment, Florida."
>
> Q.	And is this part of the proposal for returning the channel to its natural state?
>
> A.	It is, yes.

Q. And if you look at the very top bullet point right above that, it says "Proposed improvements," and then the first bullet point, that first sentence, can you read that.

A. Under "Proposed improvements"?

Q. The first bullet point.

A. First bullet point, okay. "Create a natural channel and floodplain through existing breach area to minimize potential for flood flows to impound behind the embankment and to minimize additional erosion of the embankment material."

Q. And so you would agree with me that the purpose or one of the purposes for returning this area to its natural state is to prevent the impoundment of potential flood flows; is that correct?

A. I think — that's what this says, and I think that that probably was a recognition that [there] would be less impoundment with the natural channel.

(*Id.*, at 23-24 (emphasis added); *see also* Ex. B, Dixon/Nutter Mem., at 1.) Defendant

concedes that it "recogni[zes]" ***now*** (post-2014) that there "would be less

impoundment with the natural channel," instead of the dam, but the record to

Plaintiffs' knowledge does not reflect that Defendant has ***conceded or admitted*** that

it knew "then," back before 2014, that a natural channel was preferable to a dam so

that potential impounded flood flows would be eliminated. This lack of a concession

or admission by Defendant means that Plaintiffs are entitled to show that, just as it

was easy for Defendant to reach this conclusion after 2014, so too would it have been easy for Defendant to reach this conclusion prior to 2014. Accordingly, the clear exceptions to Rule 407 are triggered here. *See* Fed. R. Evid. 407.

Defendant has claimed (either directly or inferentially) in its moving papers that it has not denied the foregoing facts, but the record belies that claim, as set forth in detail above. Defendant's refusal to conceded these points—that the dam was abandoned in 2012 and served no purpose, that the permitting agency would have required removal of the dam prior to the 2014 flood, that removal could have been accomplished at a cost of less than $600,000, that the return of the stream to a natural channel was feasible and in fact would have eliminated the risk caused by impounded flood flows, and that it was in fact easy to remove the dam—means that these points are all in issue at trial. As such, the clear exceptions to Rule 407 are triggered here. *See* Fed. R. Evid. 407.

### 3. Other Remedial Measures

As Defendant has failed to ***specify*** what "other remedial measures" may be in dispute between the parties, it is impossible to analyze whether any evidence of such unnamed "other remedial measures" fits the strictures and exceptions of Rule 407. That alone should justify a denial of Defendant's motion concerning such "other remedial measures." But at the very least, Plaintiffs should be allowed the right to

supplemental their arguments in this brief, or make additional arguments at the time of trial, if necessary.

**4.    Rule 403 Does Not Apply Here Due to Lack of Unfair Prejudice or Confusion**

The evidence at issue here is neither unfairly prejudicial nor confusing under Rule 403. *See* Fed. R. Evid. 403. All evidence that a party seeks to put on is presumably "prejudicial" to the other side; that's not the issue. The question is whether the evidence is "unfairly" prejudicial to the opposing party. There is nothing "unfair" about introducing such evidence. It should be fair game for the jury to consider, among other things the issues raised above.

There is likewise nothing "confusing" about this evidence. Jurors are presumed to follow the instructions of the Court. If that baseline assumption is incorrect, then it would be impossible to conduct a trial. Here, there is nothing confusing about the evidence referenced above, which plainly explains the feasibility of removing the dam before the storm.

## III.    CONCLUSION

For the reasons stated, Plaintiff requests that the Court deny Defendant's Motion in *Limine* to Exclude Evidence of Subsequent Remedial Measures, (Docket No. 154), in its entirety.

## Local Rule 7.1(F) Certification

The undersigned counsel hereby certifies that this pleading is compliant with the limitations imposed by the Court and, according to Microsoft Word's "Word Count" function, pursuant to the methodology contained in Local Rule 7.1(F), this pleading is 3,128 words, which includes headings, footnotes, and quotations.

Dated: January 26, 2018

Respectfully submitted,

*/s/ James L. Kauffman*
James L. Kauffman, Fl. Bar No. 12915
Brian A. Glasser, *Pro Hac Vice Pending*
Jonathan R. Marshall, *Pro Hac Vice*
**BAILEY & GLASSER LLP**
1054 31st Street, N.W., Suite 230
Washington, DC 20007
Telephone: (202) 463-2101
Fax: (202) 463-2103
jkauffman@baileyglasser.com
bglasser@baileyglasser.com
jmarshall@baileyglasser.com

Jeremiah J. Talbott
**Law Office of J.J. Talbott, P.A.**
900 East Moreno Street
Pensacola, FL 32503
jj@talbottlawfirm.com

Christopher M. Vlachos
**Vlachos Injury Law, P.A.**
244 East Intendencia Street
Pensacola, FL 32502
chris@vlachosinjurylaw.com

*Counsel for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 26th day of January, 2018, that a true copy of

the foregoing pleading was served via electronic delivery on counsel below:

Daniel W. Nelson
D.C. Bar No. 433415
Gibson, Dunn & Crutcher LLP
1050 Connecticut Ave., N.W.
Washington, D.C. 20036
Telephone: 202-887-3687
dnelson@gibsondunn.com

Charles F. Beall, Jr.
cbeall@mhw-law.com
Florida Bar No. 66494

Larry Hill
lhill@mhw-law.com
ljohnson@mhw-law.com
Florida Bar No. 173908

Kimberly S. Sullivan
ksullivan@mhw-law.com
Florida Bar No. 101408
MOORE, HILL & WESTMORELAND, P.A.
220 West Garden Street
SunTrust Tower, 9th Floor
Pensacola FL 32502
Telephone: (850) 434-3541

*Attorneys for Defendant*

Patrick Clerkin *Pro Hac Vice*
Texas Bar No. 24040702
Aaron S. Imhoff *Pro Hac Vice*
California Bar No. 310743
Clerkin Sinclair & Mahfouz, LLP
530 B Street, 8th Floor
San Diego, CA 92101
Telephone: 619-308-6550

*/s/ James L. Kauffman*
James L. Kauffman