**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**JOHN NAVELSKI, et al.,**

    **Plaintiffs,**

**v.**                              **CASE NO. 3:14cv445-MCR/CJK**

**INTERNATIONAL PAPER
COMPANY,**

    **Defendant.**
_____/

## <u>ORDER</u>

Plaintiffs filed this putative class action tort suit against Defendant International Paper Company ("IP"), alleging property damage from a dam breach, and the Court later certified a class on liability only. Trial is scheduled to begin on February 20, 2018. Pending is a Motion to Intervene filed by United Services Automobile Association (a Reciprocal Inter-Insurance Exchange) ("USAA") and USAA General Indemnity Company ("USAA GIC" or collectively, "Intervenors"), seeking to assert subrogation rights based on their payment of several putative members' property insurance claims. ECF No. 131. Having fully considered the matter, the Court finds that the motion should be granted, as limited in this Order.

**Background**

Plaintiffs filed a putative class action suit in state court, claiming that IP failed to properly maintain the Kingsfield Road Dam, which it owned and which collapsed during a storm in April 2014, allegedly causing damage to Plaintiffs' homes. The suit was removed to federal court. The Amended Complaint, ECF No. 38, asserts claims of negligence, trespass, nuisance, and strict liability. On March 25, 2017, the Court certified a class solely for the purpose of determining liability. Class Notice was approved on September 19, 2017, and class members were given 45 days from the date of mailing the notice to opt out.[1]

On November 9, 2017, USAA and USAA GIC moved to intervene to assert a subrogation right to recover insurance payments they made on claims arising out of the same occurrence that is the subject of this suit. USAA and USAA GIC were insurers of seven class members.[2] The Complaint in Intervention alleges that each insured complied with all terms of the policies and filed proofs of loss specifying the amount of damages caused by this occurrence and that the Intervenors paid the total

---

[1] The list of class members and opt-outs has been filed. Only one couple has filed an exclusion request. *See* ECF No. 139.

[2] The insureds are Justin Schaffer, Kenneth Morris, David Pearce, Charlie Code, Martin Stephens, John Nickell, and James Westbrook, none of whom is a named Plaintiff in the suit but each received the class notice and has not opted out of the certified class.

CASE NO. 3:14cv445-MCR/CJK

sums claimed as loss. It is alleged that USAA paid its insureds the total sum of $411,756.45 and USAA GIC paid its insureds a total of $679,305.04. The Intervenors seek to join as plaintiffs in the counts asserted in the First Amended Complaint based on these insurance payments.

Plaintiffs oppose the Motion to Intervene as premature, arguing that the Complaint in Intervention fails to state a ripe subrogation claim. In reply, the Intervenors argue that the claim is ripe, that Plaintiffs have misstated Florida's made-whole doctrine, and that the requirements for intervention are satisfied. The Intervenors also clarify and limit the scope of the proposed intervention, confirming that they are not requesting to participate in the upcoming liability trial. Specifically, the Intervenors reference "the conditions listed in [paragraph] Number 3" of an email between counsel dated November 21, 2017. *See* ECF No. 145-2, at ¶ 3. Although not attached to the original motion, this email states in Paragraph Number 3 that "USAA and USAA GIC will not participate in the trial on liability unless issues of their rights to subrogation are implicated or the class settles its claims beforehand."[3] *Id.*

---

[3] The email is attached as an exhibit to Intervenor's Reply. *See* ECF No. 145-2. It includes a list of other conditions as well, including the right to be informed of, and participate in, all mediation or settlement negotiation efforts, to have access to all filings and be informed of the progress of litigation, and to have the right to reject a global settlement offer made at any stage of the litigation and pursue their own suit. However, in their Reply, the Intervenors only reference

Defendant IP initially did not oppose the motion to intervene but reserved the right to "oppose the imposition of any conditions on the Insurers' intervention that might prejudice IP's rights." ECF No. 140. IP now opposes the Intervenors' proposed conditions to intervention, ECF No. 148, arguing that the Intervenors waived their right to request conditions and that IP would suffer prejudice by the proposed conditions.

## Discussion

In this diversity suit, on substantive matters, the Court applies the substantive law of the forum state, which in this case is Florida, *see So. Owners Ins. Co. v. Easdon Rhodes & Assocs., LLC*, 872 F.3d 1161, 1164 (11th Cir. 2017), while "federal law governs matters of procedure," *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1259 (11th Cir. 2015). *See Erie R.R. v. Tompkins*, 304 U.S. 64 (1938).

### A. Ripeness

The doctrine of ripeness, "[b]orn from both Article III and prudential concerns," is related to standing in that it prevents courts from the premature

---

the condition in paragraph 3 and note that they will pursue individual damages trials if liability is found.

CASE NO. 3:14cv445-MCR/CJK

adjudication of abstract disagreements.[4]  *See Temple B'Nai Zion, Inc. v. City of Sunny Isles Beach*, 727 F.3d 1349, 1356 (11th Cir. 2013) (citing *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807 (2003)); *see also Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n. 18 (1993).  "Ripeness is peculiarly a question of timing."  *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985) (internal quotation and marks omitted).  Determining whether a dispute is ripe requires courts to undertake a two-step analysis: (1) evaluating the fitness of the issues for judicial determination, and (2) considering the hardship to the parties if judicial determination is withheld.  *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1224 (11th Cir. 2004).

In this case, the fitness of the issue for judicial determination turns on the nature of the subrogation claim.  In Florida, subrogation is described as "the substitution of one person in the place of another with reference to a lawful claim or right."  *Dade Cty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638, 646 (Fla. 1999)

---

[4] The concept of standing to sue requires consideration of both constitutional and related prudential limitations, which, taken together, ensure that a federal court will address only a "case or controversy" brought by a party with a personal stake in the matter (that is, one who has suffered an actual or imminent injury that is not abstract); with an injury bearing a causal relationship to the challenged action; and a claim that is capable of being redressed.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).  "The standing question thus bears close affinity to questions of ripeness—whether the harm asserted has matured sufficiently to warrant judicial intervention—and of mootness—whether the occasion for judicial intervention persists."  *Warth v. Seldin*, 422 U.S. 490, 499 n.10 (1975)

(quoting *W. Am. Ins. Co. v. Yellow Cab Co. of Orlando*, 495 So. 2d 204, 206 (Fla. 5th DCA 1986)). Legal subrogation (also called "equitable subrogation") is "a creature of equity" that arises as "a legal consequence of the acts and relationship of the parties" and "is based on the policy that no person should be unjustly enriched by another's loss."[5] *Yellow Cab Co.*, 495 So. 2d at 207; *see also Dade Cty.*, 731 So. 2d at 647. A claim for equitable subrogation is "generally appropriate" if: "(1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt, (4) the subrogee paid off the entire debt, and (5) subrogation would not work any injustice to the rights of a third party." *Dade Cty.*, 731 So. 2d at 646. Ordinarily, a release of other responsible parties is also required. *See id.* at 646-47; *see also Welch v. Complete Care Corp.*, 818 So. 2d 645, 648 (Fla. 2d DCA 2002) (noting equitable subrogation requires a showing that the claim has been paid and that the party seeking subrogation has obtained a release). The Florida Supreme Court has

---

[5] Florida law also recognizes "conventional subrogation," which arises from a contract in which one party has voluntarily paid the debt of another and by agreement is given the rights and remedies of the original creditor. *See Intervest Constr. of Jax, Inc. v. Gen. Fidelity Ins. Co.*, 133 So. 3d 494, 504 (Fla. 2014); *Dade Cty.*, 731 So. 2d at 646. *Cf. Yellow Cab*, 495 So. 2d at 207 (stating "[s]ubrogation in equity is not available to a mere volunteer or stranger" who pays without any obligation to do so). The proposed Intervenors were not mere volunteers; they paid a claim pursuant to their insurance contract obligations. Although their payments stemmed from a contractual obligation, they do not assert reliance on a subrogation clause in the policy, and therefore, the Court assumes that conventional subrogation does not apply.

CASE NO. 3:14cv445-MCR/CJK

consistently applied this test in the tort context to the "prototypical case" where a tortfeasor asserts an equitable subrogation claim. *Holmes Reg'l Med. Ctr., Inc. v. Allstate Ins.*, 225 So. 3d 780, 785-86 (Fla. 2017) (dismissing a tortfeasor's intervention in a victim's suit against a subsequent tortfeasor in the absence of full payment of an existing judgment); *Dade Cty.*, 731 So. 2d at 646 (stating equitable subrogation requires a tortfeasor to first pay the entire debt, not merely a partial payment). Florida's "made whole doctrine" provides that an "insurer has no right as against the insured where the compensation received by the insured is less than his loss." *Holmes*, 225 So. 3d at 786 (quoting *Rubio v. Rubio*, 452 So. 2d 130, 132 (Fla. 2d DCA1984)); *see also Intervest Constr. of Jax, Inc. v. Gen. Fidelity Ins. Co.*, 133 So. 3d 494, 504 (Fla. 2014) (discussing Florida's made whole doctrine); *Dade Cty.*, 731 So. 2d at 646 (rejecting a "liberal application of the equitable subrogation doctrine" that would allow subrogation for partial payment). Thus, until the obligation to the victim is fully discharged, the victim is "entitled to enforce the balance of his claim" and the person whose property has been used in discharging only a part of the claim is not entitled to occupy his position" in the litigation. *Holmes*, 225 So. 3d at 785 (quoting *Restatement (First) of Restitution* § 162 com. C (Am. Law Inst. 1937)).

Plaintiffs contend that these principles squarely apply and the Intervenors have failed to state a ripe subrogation claim because no judgment has been entered and they did not pay in full and secure a release from the insureds. The Intervenors argue that the context here is different from the "prototypical tort case,"[6] *Dade Cty.*, 731 So. 2d at 646, because they are not tortfeasors attempting to recover without paying the entirety of the insured's claim. They insist that a release is not necessary because they paid *their entire* contractual obligation to the insureds based on what the insureds represented as their total proof of loss. The Court agrees with the Intervenors. Allowing them to intervene and assert a subrogation claim on these facts, where the insurers have satisfied the whole demand of each insured, is consistent with Florida law. *See Morgan v. Gen. Ins. Co. of Am.,* 181 So. 2d 175, 178 (Fla. 1st DCA 1965) (holding that intervention by insurer in suit by the insured against the tortfeasor and participation in settlement negotiations was effective to protect insurer's subrogation rights); *see also QBE Ins. Corp. v. Jorda Enters., Inc.*, No. 10-21107-CIV, 2012 WL 12844302, at *7 (S.D. Fla. Aug. 6, 2012) ("Florida law is clear that no right of subrogation may be claimed until the whole demand of the creditor has been satisfied.") (internal quotations omitted). Having paid the loss,

---

[6] Again, the prototypical tort situation is where one tortfeasor settles with the victim and then attempts to exercise subrogation rights against another tortfeasor.

CASE NO. 3:14cv445-MCR/CJK

the insurer may join the insured's suit, *see Holyoke Mut. Ins. v. Concrete Equip.*, 394 So. 2d 193, 195 (3d DCA 1981) (stating the injured party's insurer "had the right, as the real party in interest, to prosecute the action in its name"),[7] provided that the insured is entitled to be "made whole" before the subrogated insurer is permitted to any recovery from the tortfeasor, *Ins. Co. of N. Am. v. Lexow*, 602 So. 2d 528, 531 (Fla. 1992) (insurer paid a claim and joined the insured in bringing suit). Notably, the Florida Supreme Court in *Lexow* observed that the insurer's "right to claim subrogation exists solely by virtue of having paid a claim under the policy." *Id.*

Federal law also supports this decision. As commentators have noted, "[o]ne of the most common instances of subrogation is when an insurer indemnifies its insured, at which time the former succeeds to whatever rights the latter has against the third party who allegedly caused the damage." 6A The Late Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, et al., *Federal Practice and Procedure* § 1546 (3d ed. 2010). Federal common law recognizes that if an insurer "has paid an entire loss suffered by the insured, it is the only real party in interest and must sue in its own name," whereas "[i]f it has paid only part of the loss, both the insured and

---

[7] *See* Fed. R. Civ. P. 17(a) (requiring an action to "be prosecuted in the name of the real party in interest").

CASE NO. 3:14cv445-MCR/CJK

insurer (and other insurers, if any, who have also paid portions of the loss) have substantive rights against the tortfeasor which qualify them as real parties in interest."[8] *United States v. Aetna Cas. & Sur. Co.,* 338 U.S. 366, 380–81 (1949). Regardless of whether it is ultimately determined that the insured class member plaintiffs' loss in fact was greater or less than what they claimed initially (and greater than what insurance paid), the Court finds that the claim is ripe because the insurers allege that they paid the class members' entire proof of loss.[9]

## B.    Intervention

Rule 24 of the Federal Rules of Procedure distinguishes between two types of intervention – intervention as of right under Rule 24(a) and permissive intervention under Rule 24(b).  Intervention as of right requires a showing of (1) timeliness, (2) an interest related to the property or transaction that is the subject of the suit, (3) that the intervenor is so situated that disposition of the suit may impede or impair the ability to protect that interest, and (4) that the interest is not adequately represented

---

[8] While Florida law provides that a "partial payment" is not sufficient to permit a subrogation claim, *see Holmes*, 225 So. 3d at 785; *Dade Cty.*, 731 So. 2d at 646, the allegations here include that the insurers paid the entirety of each claim.

[9] On the facts alleged by the Intervenors, it is questionable whether their insureds have any real interest in this litigation.

CASE NO.  3:14cv445-MCR/CJK

by the existing parties to the suit.[10]  *See Tech. Training Assocs, Inc. v. Buccaneers Ltd. Partnership*, 874 F.3d 692, 695-96 (11th Cir. 2017); *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989) (noting that once these requirements are met, intervention must be allowed).  Thus, intervention as of right requires a showing that "interest asserted is direct, substantial and legally protectable." *Huff v. Commissioner of IRS*, 743 F.3d 790, 796 (11th Cir. 2014) (internal quotations omitted); *Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc.*, 425 F.3d 1308, 1311 (11th Cir. 2005).  If a proposed intervenor would be "practically disadvantaged by his exclusion from the proceedings," intervention as of right is satisfied.  *Salvors, Inc. v. Unidentified Wrecked & Abandoned Vessel*, 861 F.3d 1278, 1295 (11th Cir. 2017) (quoting *Huff*, 743 F.3d at 800).

Permissive intervention under Rule 24(b) requires a showing of (1) timeliness, and (2) that the intervenor's claim or defense shares a common question of fact or law with the main action.  Fed. R. Civ. P. 24(b); *Chiles*, 865 F.2d at 1213.

1.    Timeliness

---

[10] Specifically, the rule requires the Court to permit intervention for anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a)(2).

Several factors are relevant to a determination whether the motion to intervene is timely, including the length of time that the proposed intervenor knew or reasonably should have known of its interest in the case, the extent of any prejudice to existing parties or to the proposed intervenor if intervention is denied, and the existence of unusual contributing circumstances. *See United States v. Jefferson Cty.*, 720 F.2d 1511, 1516 (11th Cir. 1983); *see also Stallworth v. Monsanto Co.*, 558 F.2d 257, 263 (5th Cir. 1977).[11] Plaintiffs argue that intervention is untimely because the claim is premature, lacking a direct and substantial legally protected interest at this time, citing *Taco Bell Corp. v. Continental Cas. Co.*, No. 01-C-0438, 2003 WL 124454 (N.D. Ill. Jan. 13, 2003) (excess insurer denied intervention because insured's liability and primary insurer's liability had not yet been determined); *B&B Hardware, Inc. v. Fastenal Co.*, No. 4:10CV00317-BRW, 2011 WL 1540445, at *1 (E.D. Ark. Apr. 22, 2011) (intervention denied where judgment against debtor was on appeal). Plaintiffs also contend that Rule 24(a)(2) does not prevent the proposed intervenors from refiling their request if circumstances change, citing *Fahnestock v. E. Alliance Ins. Co.*, No. 1:13-CV-2417, 2016 WL 7384138, at *3 (M.D. Pa. Dec. 21, 2016) (finding intervention timely but the claim that the lawsuit might impede a

---

[11] *See Bonner v. Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*) (adopting the case law of the former Fifth Circuit developed before October 1, 1981, as precedent in this Circuit).

CASE NO. 3:14cv445-MCR/CJK

third party's ability to recover in a separate suit did not justify intervention). The Court rejects the contention that the claim is premature for reasons discussed above and in light of the limited scope of intervention proposed. Moreover, the Court agrees with Intervenors that the cases cited by Plaintiffs are factually distinguishable from this case and therefore inapposite.[12]

The Court finds that intervention is timely because the Intervenors filed their motion within two months of the class notice being issued. Although discovery was closed by that time, the Intervenors maintain that they will not participate in the trial and want only to be on notice of the proceedings and to participate in any settlement discussions.[13] On these conditions, there is no prejudice to Plaintiffs or the interests

---

[12] The *Taco Bell* case involved an excess insurer whose liability was contingent on the judgment. 2003 WL 124454. Contrary to the facts of this case, the excess insurer in *Taco Bell* had not paid the entire claim but was requesting to intervene to determine its duty to indemnify. In *B&B Hardware*, a judgment creditor sought to intervene and stay a case in order to seize and execute on property that was the subject of the suit, but the original judgment was still on appeal so intervention was found to be premature; additionally, the court found that the creditor remained free to assert a lien against any recovery, so intervention was denied. 2011 WL 1540445. Those facts are distinct from those of this case. Finally, in *Fahnestock,* a worker's compensation insurer, which was paying ongoing benefits, sought to intervene in the worker's premises liability suit. The petition to intervene was found timely, even after three years of litigation, and the insurer was found to have a sufficient interest. *See Fahnestock,* 2016 WL 7384138. However, the court ultimately determined that intervention was premature because any recovery on the claim remained speculative. The court indicated that intervention would be considered again after the verdict and before judgment. *Id.* at *4. The discretionary decision to consider intervention at a later time in the suit is instructive but not binding on this Court and not persuasive on the facts of this case.

[13] Rarely will a motion to intervene be deemed timely where the proposed intervention seeks to undo settlement negotiations. *See generally, Hollywood Community Synagogue, Inc. v.*

of IP, and no delay will be injected into the Court's trial calendar by granting intervention at this time for this limited purpose.

    2.    <u>Interest in the Subject of the Suit</u>

Plaintiffs contend that the Intervenors lack a cognizable legally protectable interest in the suit. The Court disagrees. There is no question that the Intervenors have direct, substantial, and legally protected subrogation rights relevant to this suit. *See Athens Lumber Co. v. Fed. Election Comm'n*, 690 F.2d 1364, 1366 (11th Cir. 1982) ("In essence, the intervenor must be at least a real party in interest in the transaction which is the subject of the proceeding."). The insurers allege that they have paid the claims of their insureds, which constitutes a sufficient interest to warrant intervention as a real party in interest, although the insured plaintiffs retain priority of recovery if they have not yet been made whole. *See Holyoke*, 394 So. 2d at 197 ("an insurer which has paid an insured's loss is a subrogee of the insured's cause of action against a tort-feasor. . . [and] is permitted, but not required, to prosecute and maintain an action against the tort-feasor in its own name"); *Schonau v. GEICO Gen. Ins. Co.*, 903 So. 2d 285, 287 (Fla. 4th DCA 2005) ("where both the

---

*City of Hollywood, Fla*, 254 F. App'x 769, 771 (11th Cir. 2007) (unpublished) (affirming the denial of a motion for intervention as of right as untimely when filed one day prior to the district court's approval of a consent decree and no unusual circumstances justified undoing the settlement negotiations that had culminated in a consent decree).

CASE NO. 3:14cv445-MCR/CJK

insurer and the insured simultaneously attempt to recover all of their damages from a tortfeasor who cannot (because of insolvency, limited insurance coverage, or other reasons) pay the full value of damages, the insured has priority of recovery over the insurer"); *see also Aetna Cas. & Sur. Co*., 338 U.S. at 381 (noting that where an insurer has paid a claim, "both insured and insurer 'own' portions of the substantive right and should appear in the litigation in their own names" and the insurer is a real party in interest under the Federal Rules of Civil Procedure).

3.    <u>Impairment</u>

The Intervenors contend that their ability to protect their legal interest will be impaired "as a practical matter," as required under Fed. R. Civ. P. 24(a)(2), if intervention is not allowed, because they will be bound by the final judgment in this case due to their privity with their insureds and identity of interest with them, citing *QBE Ins. Corp.,* 2012 WL 12844302, at *13 (dismissing insurer's subsequent suit for subrogation on res judicata grounds applying Florida law).  The Court agrees that the Intervenors' rights could be impaired by a class settlement of this case if they are not allowed to intervene.  *See id.* (stating, the insurer "stands in the shoes of its subrogor" and suffers not only all of the rights but also "all of the liabilities to which the subrogor would be subject"); *Massey v. David,* 831 So. 2d 226, 233 n.12 (Fla. 1st DCA 2002) ("An insurer may be a virtual party to a lawsuit involving its insured

CASE NO.  3:14cv445-MCR/CJK

where their interests coincide."). The Intervenors would potentially be impaired by exclusion from a final damages determination or settlement negotiations. *See Tech. Training Assocs.,* 874 F.3d at 696–97 (finding, "the risk that the movants will be bound by an unsatisfactory class action settlement satisfies Rule 24(a)(2)'s third prong).

4.    Adequate Representation by Existing Parties

The Court also finds that the insurers are not adequately represented by the existing parties with respect to the damages determination or any potential settlement discussions. There is a presumption of adequacy of representation in this class context, where the insurers and class plaintiffs share a common interest in IP being found liable and in obtaining the greatest damages award. *See id.*, at 697. The Court finds that the liability class Plaintiff representatives will adequately represent the interests of the class members and the Intervenors in the liability phase, as long as it proceeds through the trial, because all share the identical interest in IP being found liable for the dam breach. As to damages or the possibility that any settlement discussions could occur, however, their interests may diverge, and no party yet represents the interest of the insurers.[14] The Plaintiffs may have conflicting interests

---

[14] Also, although the Intervenors have the same general claim as their insureds, who are class members, their insureds are not named plaintiffs and thus do not control the proceedings. *See*

CASE NO.  3:14cv445-MCR/CJK

with the insurers with respect to the amount they would be willing to settle for and in establishing the extent of loss if liability is found or a settlement is negotiated. Therefore, the Court finds that the Intervenors have established a right to intervene under Rule 24(a)(2).

Alternatively, even if intervention as of right were not met, the Court finds that permissive intervention—limited in scope to settlement discussions and damages—is appropriate on these facts under Rule 24(b). Timeliness is established and the Intervenors' claims undoubtedly share a common question of law or fact with this case that otherwise could be determined to their disadvantage. *See Jefferson Cty.*, 720 F.2d at 1315. Moreover, intervention for this limited purpose will promote efficiency and consistency by facilitating the resolution of all related issues and claims in a single proceeding.

Accordingly, the Motion to Intervene, ECF No. 131, is **GRANTED** for the following limited purpose: Intervenors are entitled to receive filings and participate in any settlement discussions that occur during the course of the liability phase; but they are not entitled to participate at the class pretrial conference or class liability

---

*Day v. Persels & Assocs., LLC*, 729 F.3d 1309, 1317 (11th Cir. 2013) ("Absent class members are not designated on record as a plaintiff or defendant [and they] ordinarily lack the power to control proceedings.").

CASE NO. 3:14cv445-MCR/CJK

trial.[15]  If liability is established, all unnamed plaintiff class members and Intervenors alike are free to pursue individual damages suits.  Intervenors are directed to file their Complaint in Intervention as a stand-alone pleading.

 **DONE AND ORDERED** this 28th day of January 2018.


*M. Casey Rodgers*
**M. CASEY RODGERS**
**CHIEF UNITED STATES DISTRICT JUDGE**

---

[15] Of course, this does not preclude the Intervenors from attending the proceedings.

CASE NO.  3:14cv445-MCR/CJK